**Robert SIMON and Russell Kruse,
Appellants (Plaintiffs Below),**

v.

**CITY OF AUBURN, INDIANA, BOARD
OF ZONING APPEALS; Russell Ta-
gue, Member, Donald Aiken, Member,
Ruth Ann Buttermore, Member, Doug-
las J. Atz, Board Attorney: and City of
Auburn, Indiana, and Cedar Glen Joint
Venture Appellees (Defendants Below).**

No. 17A03–8703–CV–69.

Court of Appeals of Indiana,
Third District.

Feb. 17, 1988.

Paul R. Cherry, Kruse, Kruse & Cherry, Auburn, for appellants.

Douglas J. Atz, Finley & Atz, Kendallville, for appellees City of Auburn, Ind., Board of Zoning Appeals, Russell Tague, Donald Aiken, Ruth Ann Buttermore, Members, Douglas J. Atz, Bd. Atty., and City of Auburn, Ind.

N. Reed Silliman, Lisa T. Hamilton, Baker & Daniels & Shoaff, Fort Wayne, for appellees Cedar Glen Joint Venture.

STATON, Judge.

Plaintiffs Russell Kruse and Robert Simon raise the following issues on appeal:

1. Whether the Indiana Open Door Law[1] precludes a public agency from seeking legal advice from its attorney in private about matters which are not litigation-related.

2. Whether, under IC 36–1–5–4 [2] a city's general zoning ordinance is legally valid when it purports to incorporate by reference a zoning map but no zoning map is included in the ordinance and no zoning map is on file in the city clerk-treasurer's office.

Reversed in part, and affirmed in part.

I.

*Open Door Law*

The Building Commissioner of the City of Auburn issued a building permit to James Witmer and Martha Conrad, partners in Cedar Glen Joint Venture, to construct two condominiums in the Auburn area. Plaintiffs, both of whom live near the site in question, appealed the action to the Auburn Board of Zoning Appeals.

A public hearing was held on January 15, 1985. At the conclusion of the plaintiffs' argument, the Board voted to meet again in public session at 7:00 p.m. on January 17, 1985, to render a decision. On January 17, 1985, just prior to the second public session and until approximately 7:15 p.m., the Board met privately with its attorney (the assistant city attorney) in a room one floor beneath the public meeting room. Board members testified that during this private session they discussed the legal validity of the project with their attorney. The Board then proceeded to the public session where it unanimously approved the plan without discussion.

■ The plaintiffs contend that this private session was held in violation of the Open Door Law since no notice was given (IC 5–14–1.5–5); no minutes were taken (IC 5–14–1.5–4); and no member of the public was admitted (IC 5–14–1.5–3) despite the fact it did not constitute an executive session authorized under IC 5–14–1.5–6. Thus, they seek a permanent injunction

---

1. IC 1977, 5–14–1.5–1 et seq. (Burns Code Ed.).

2. IC 1980, 36–1–5–4 (Burns Code Ed., 1981 Repl.).

against the Board barring it from committing such violations in the future.[3]

The defendants contend that the Open Door Law does not apply here because the private session did not constitute a "meeting" under the statute.

After a trial without a jury, the trial judge agreed with the defendants and entered the following judgment and opinion:

## "INDIANA OPEN DOOR LAW VIOLATION HEARING

"In the matter of that portion of Plaintiffs' allegations against the defendants, the Board of Zoning Appeals of the City of Auburn and the City of Auburn, of a violation of the Indiana Open Door Law by said Board of Zoning Appeals of the City of Auburn on January 17, 1985, the Court having heard the evidence, the arguments of counsel and having examined all briefs and memoranda submitted by all parties now finds for the Defendant, the Board of Zoning Appeals of the City of Auburn, and against the Plaintiffs; that there was no violation of said Indiana Open Door Law of the State of Indiana by said Board of Zoning Appeals of the City of Auburn on January 17, 1985; that all official deliberations and actions of said Board of Zoning Appeals on January 17, 1985 were in full and complete complaince [sic] with Indiana Code 5–14–1.5, Scetions [sic] 1 through 7, being the Indiana Open Door Law; that the prevailing party to such issue, being the Board of Zoning Appeals of the City of Auburn, is not such as [sic] entity as is entitled to an award of attorney fees, court costs or other reasonable expenses of litigation under I.C. 5–14–1.5–7(c) of the Indiana Open Door Law.

## "MEMORANDUM OPINION

"Although the issue involving the alleged violation of the Indiana Open Door Law by the Board of Zoning Appeals of the City of Auburn is a review of actions by an administrative agency, it is a collateral attack upon actions of such agency and not a direct review of administrative actions. Accordingly, the Court renders the following Memorandum Opinion in lieu of Special Findings of Fact.

"Upon issues of Plaintiffs' claim against the Board of Zoning Appeals of the City of Auburn of a violation of the Indiana Open Door Law being I.C. 5–14–1.5, Sections 1 through 7, by the Board of Zoning Appeals of the City of Auburn on January 17, 1985, the Court renders the following Memorandum Opinion:

"That on January 17, 1985, the Board of Zoning Appeals of the City of Auburn was a public agency and governing body conducting a meeting to deliberate and take final official action upon public business delegated to said Board of Zoning Appeals; that the meeting of said Board of Zoning Appeals in their third floor meeting room of the City Hall of the City of Auburn was convened on January 17, 1985 for the purpose of taking official final action upon public business by a majority of said Board of Zoning Appeals, being an official ruling on the appeal by the Plaintiffs of the issuance of a building permit by the Building Commissioner of the City of Auburn to the Defendant, Cedar Glen Joint Venture, and on the petition by the Plaintiffs to stay all construction by said Defendant, Cedar Glen Joint Venture under said building permit; that said meeting of the Board of Zoning Appeals on January 17, 1985 was a continuance of a meeting on January 15, 1985 of said Board of Zoning Appeals for the hearing of such issues; that siad [sic] meeting on January 17, 1985 was to convene at 7:00 o'clock P.M. on said date; that the meeting room of said Board of Zoning Appeals is located on the third floor of the Auburn City Hall Building, which room is accessible only by stairs; that, it was a relatively common practice for members of the Board of Zoning Appeals to congregate on the second floor of the Auburn City Hall in the hallway, the office of the City Engineer,

---

**3.** *See* IC 5–14–1.5–7. The plaintiffs' request on appeal for an award of attorney's fees, court costs, and other litigation expenses is waived. The issue was not raised in their Motion to Correct Errors. *See Wischmeyer v. Little* (1960), 131 Ind.App. 485, 169 N.E.2d 207, 212, *trans. denied.*

the office of the City Building Commissioner or the Mayor's office to check the agenda for the scheduled meetings of said Board of Zoning Appeals before proceeding to the meeting room on the third floor; that, shortly before the scheduled meeting on January 17, 1985, members of the Board of Zoning Appeals were congregating in the second floor hallway on their way to the meeting, and certain of the members of the Board of Zoning Appeals wished to confer with Douglas Atz, Assistant City Attorney for the City of Auburn and Attorney for the Board of Zoning Appeals, on the legal aspects of matters that had occurred at the lengthy meeting of said Board of Zoning Appeals on January 15, 1985; that on January 17, 1985, the members of the Board of Zoning Appeals who had assembled in the hallway of the second floor of the City Hall were invited by the Secretary to the Mayor of the City of Auburn to have seats in her office; that members of said Board of Zoning Appeals accepted such invitation and sat in said secretary's office and there asked legal advice, explanation and interpretation from Douglas Atz, Attorney for the Zoning Appeal, as to some of the matters that had occurred at the meeting on January 15, 1985, which legal advice, explanations and interpretations were given by said Attorney at that time; that no deliverations [sic] or actions, other than to seed [sic] such legal advice on matters that had occurred at the January 15, 1985 meeting from the Attorney for the Zoning Appeals, took place on the second floor or in the office of the Mayor's secretary during the few minutes certain members of the Board of Zoning Appeals members spent on their way to the meeting on the third floor; that said gathering of some Board of Zoning Appeal members on the second floor of the City Hall on January 17, 1985 was by chance and not by design; that the members of the Board of Zoning Appeals had not only the right but also the duty to seek advice, explanation and interpretation from the Attorney of said Board prior to the meeting of said Board on January 17, 1985, as to relevant legal matters which had been presented for their consideration at the extension of the meeting of said Board on January 15, 1985, by both the Plaintiffs and by the Defendant, Cedar Glen Joint Venture; that such chance gathering of some members of the Board of Zoning Appeals in the office of the secretary of the Mayor on January 17, 1985 did not demonstrate any intention on the part of the Board of Zoning Appeals or any of the members of said Board to avoid a liberal construction of any of the provisions of I.C. 5–14–1.5, Section 1 through 7, being the Indiana Open Door Law; that all official hearings, deliberations and actions of said Board of Zoning Appeals, in their ruling and decision on the pending appeal by the Plaintiffs of the issuance of the building permit by the Building Commissioner of the City of Auburn to the Defendant, Cedar Glen Joint Venture, and on the petition by the Plaintiffs to stay development and construction by said Defendant, Cedar Glen Joint Venture, under said building permit, took place at the meeting of said Board on January 15, 1985 and January 17, 1985 in the Board meeting room on the third floor of the Auburn City Hall, which meetings were open to the public in full compliance with the letter and the spirit of the Indiana Open Door Law; that the parties seeking to overturn the decision of said Board of Zoning Appeals have not sustained [sic] their burden of proof to establish that the decision of said Board of Zoning Appeals was made at any meeting of said Board which was in violation of the Indiana Open Door Law; that at said public meeting on January 17, 1985, the Board of Zoning Appeals unanimously accepted the Special Findings prepared by the Attorney for said Board and upheld the granting of the building permit to the Defendant, Cedar Glen Joint Venture, by the Building Commissioner of the City of Auburn, and said Board of Zoning Appeals voted against the efforts of the Plaintiffs to stop construction by the Defendant, Cedar Glen Joint Venture; that the prevailing party to such issue, being the Board of Zoning Appeals of the City of Auburn, is not a proper entity to which the Court may award reasonable attorney fees, court costs and other reasonalbe [sic] expenses of litigation

within the purview of section 7(c) of I.C. 5–14–1.5."

Record at 289–93.

Ind.Rules of Procedure, Trial Rule 52(A) provides:

"... On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

In addition, our scope of review allows us to determine whether the law was correctly applied to the facts. *Laws v. Lee* (1984), Ind.App., 471 N.E.2d 1229, 1232, *reh. denied.*

■ Here, the Open Door Law was not correctly applied to the facts. The Board's private session with its attorney did, indeed, constitute a "meeting" under the statute.[4]

IC 5–14–1.5–2(c) provides, in pertinent part:

"Meeting" means a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business. It does not include:

(1) Any social or chance gathering not intended to avoid this chapter....[5]

The Board contends, first, that it did not take official action at the private session and, second, that the private session was a chance gathering not intended to avoid the Open Door Law.

However, the Board's first contention is directly refuted by the statute itself. IC 5–14–1.5–2(d) provides that "official action" means to "receive information," among other things. Here, the Board undeniably received information—albeit in the form of legal advice from its attorney. The Board's argument that there was no group discussion—only individual questions addressed to the assistant city attorney by first one board member and then another—has no weight. Section 2(d) does not require that there be discussion before "receiving information" becomes "official action."

In addition, the Board's second contention must fail. We recognize that the trial court made a factual finding that the private session was "by chance and not by design." We also recognize the strict standard we must follow in reviewing the trial court's factual findings.

■ Indeed, upon review of a trial court's discretionary decision to grant or deny an injunction, we consider only the evidence which supports the trial court's decision along with all reasonable inferences. We will reverse only where the evidence leads to a conclusion directly opposite to the conclusion of the trial court. We neither reweigh the evidence nor judge the credibility of witnesses. *Common Council of the City of Peru v. Peru Daily Tribune* (1982), Ind.App., 440 N.E.2d 726, 728. Only when the trial court's action is clearly against the logic and effect of the circumstances will an abuse of discretion be found on appeal. *State ex rel. Stream Pollution Control Bd. v. Town of Wolcott* (1982), Ind.App., 433 N.E.2d 62, 65.

Here, the trial court's determination that the private session was a chance gathering is unsound. There was much evidence—including testimony by the Board members themselves—that the Board regularly met informally and in private with no member of the public present before each public

---

4. All *meetings* of governing bodies of public agencies must be open to the public, IC 5–14–1.5–3, except executive sessions. IC 5–14–1.5–6. Public notice of a *meeting* must be given at least 48 hours prior thereto. IC 5–14–1.5–5. An agenda must be posted prior to the *meeting;* a memorandum of the *meeting's* general substance must be kept and made available to the public. IC 5–14–1.5–4. (Emphasis added.) *See also Riggin v. Board of Trustees of Ball State*

*University* (1986), Ind.App., 489 N.E.2d 616, 622, *trans. denied.*

5. It is not disputed by the parties that the Board may not take "official action" in "meetings" not open to the public or that the Open Door Law applies to the Board. See *Boffo v. Boone County Board of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119, 1130, *reh. denied.* It is also not disputed that a majority of the Board was present at the private session.

meeting. Because such sessions constitute "official action" when board members seek legal advice from their attorney and because board members would be likely to continue engaging in such sessions given the trial court's opinion ("[T]he Board ... had not only the right but also the duty" to seek legal advice in this manner, Record at 292), we must disagree with the court's determination that the private session was a chance gathering rather than a meeting.

Further, the trial court's conclusion that the Board did not intend to avoid the Open Door Law is error as a matter of law. In *Board of County Commr's of St. Joseph County v. Tinkham* (1986), Ind.App., 491 N.E.2d 578, *trans. denied,* the trial court had awarded attorney's fees to Tinkham after finding a violation of the Open Door Law by the Board of County Commissioners. IC 5–14–1.5–7(f) provides that a party may recover attorney's fees and costs if the trial court finds that the government entity's actions were knowing and intentional.

On appeal, the Board argued that because Board members thought they were obeying the law, there was no evidence that its violation of the Open Door Law was knowing and intentional.

Judge Garrard stated:

When the law speaks of intent or knowledge it usually means the intent to do the prohibited act, or the knowledge that one is doing so. It does not require knowledge that the act is in violation of the law or the intent to violate a statutory provision. *See, e.g.,* IC 35–41–2–2. Since the Board does not argue that it did not intend the acts it performed, the award of attorney's fees must be affirmed.

*Id.* at 582.

Thus, here, since the Board does not argue that it did not intend the acts *it* performed, the trial court erred in finding

the Board did not intend to avoid the Open Door Law.[6]

Because the Board's private session with its attorney constituted a "meeting" under the Open Door Law, the other provisions of that statute apply. Thus, pursuant to IC 5–14–1.5–3(a) and IC 5–14–1.5–6(b), the meeting should have been open to the public.[7]

IC 5–14–1.5–3(a) provides:

*Except as provided in section 6 [5–14–1.5–6] herein,* all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them. (Emphasis added.)

IC 5–14–1.5–6(b) provides:

Executive sessions may be held *only* in the following instances:

(1) Where authorized by federal or state statute.

(2) For discussion of strategy with respect to:

(A) Collective bargaining:

(B) Initiation of litigation or litigation which is either pending or has been threatened specifically in writing;

(C) The implementation of security systems; or

(D) The purchase or lease of real property by the governing body up to the time a contract or option to purchase or lease is executed by the parties.

However, all such strategy discussions must be necessary for competitive or bargaining reasons and must not include competitive or bargaining adversaries.

(3) Interviews with industrial or commercial prospects or their agents by the department of commerce, the employment development commission, the film commission, the corporation for science and technology, or economic development commissions.

(4) To receive information about, and interview, prospective employees.

14-1.5–5(f)(2) (Emphasis added). No such exception is given for boards of zoning appeals.

---

**6.** It should be noted that, pursuant to statute, public notice need not be given by boards of county commissioners or town boards of trustees "if the meetings are held solely to *receive information* or recommendations in order to carry out administrative functions...." IC 5–

**7.** Further, notice should have been given, IC 5–14–1.5–5, and minutes taken. IC 5–14–1.5–4. *See also* IC 5–14–1.5–6(d).

(5) With respect to any individual over whom the governing body has jurisdiction:

(A) To receive information concerning the individual's alleged misconduct; and

(B) To discuss, prior to any determination, that individual's status as an employee, student, or independent contractor who is a physician.

(6) For discussion of records classified as confidential by state or federal statute.

(7) To discuss before any placement decision an individual student's abilities, past performance, behavior, and needs.

(8) To discuss a job performance evaluation of individual employees. This subdivision does not apply to any discussion of the salary, compensation, or benefits of employees during a budget process.

(9) When considering the appointment of a public official.... (Emphasis added.)

■ In interpreting a statute we are to ascertain and give effect to the intent of the legislature. *Foremost Life Ins. Co. v. Dep't of Ins.* (1980), 274 Ind. 181, 409 N.E.2d 1092, 1095. In determining the legislative intent, the language of the statute itself must be examined, including the grammatical structure of the clause or sentence in issue. If possible, effect and meaning must be given to every word, and no part of the statute is to be held meaningless if that part can be reconciled with the rest of the statute. *Id.* 409 N.E.2d at 1096. Further, a statute is to be examined and interpreted as a whole, giving common and ordinary meaning to words used in the English language and not over-emphasizing a strict literal or selective reading of individual words. *Id.*

■ Indispensible to ascertaining the legislature's intent is a consideration of the goals sought to be achieved and the reasons and the policy underlying a statute. It is, therefore, necessary to view a statute within the context of the entire act, rather than in isolation, when construing the statute. *Matter of Middlefork Watershed Conservancy Dist.* (1987), Ind.App., 508 N.E.2d 574, 577. In construing statutes, it cannot be presumed that a legislature expects its enactments to be applied in an illogical or absurd manner, inconsistent with its underlying policies and goals. *Id.*

Thus, a reading of IC 5–14–1.5–1 is helpful. That provision provides:

In enacting this chapter, the general assembly finds and declares that this state and its political subdivisions exist only to aid in the conduct of the business of the people of this state. It is the intent of this chapter that the official action of public agencies be conducted and taken openly, *unless otherwise expressly provided by statute*, in order that the people may be fully informed. The purposes of this chapter are remedial, and its provisions are to be liberally construed with the view of carrying out its policy. (Emphasis added.)

IC 5–14–1.5–1 specifically states that the official action of a public agency is to be conducted and taken openly *unless otherwise expressly provided by statute*. IC 5–14–1.5–3 states that all meetings of governing bodies of public agencies must be open *except as provided in IC 5–14–1.5–6*. IC 5–14–1.5–6(b) then lists the *only* instances in which an executive session is authorized by the statute—it does *not* give a public agency the authorization to meet in executive session with its attorney except "[f]or discussion of strategy with respect to ... [i]nitiation of litigation or litigation which is either pending or has been threatened specifically in writing.... IC 5–14–1.5–6(b)(2)(B).

Thus, it was improper for the Board to meet privately with its attorney to seek legal advice about matters which are not litigation-related.

Our holding is supported not only by statute but by Indiana case law. In *Citizens Action Coalition of Indiana, Inc. v. Public Service Commission of Indiana* (1981), Ind.App., 425 N.E.2d 178, *reh. denied*, we refused to add a new classification to IC 5–14–1.5–6, and we stated:

Although statutes should be given a practical interpretation, to declare that

the PSC when acting as a quasi-judicial body is excluded from the Indiana Open Door Law would be to ignore the words of the statutes. Unless otherwise expressly provided for by statute, the only meetings from which the public may be excluded are, by definition, "executive sessions." [Citation omitted.] Executive sessions are provided for in IC 5–14–1.–5–6 ... Quasi-judicial activities are not included within the statute. *Practicality, regardless of how desirable it may be, will not permit this Court to frustrate the expressed intent of the Legislature by adding new classifications to IC 5–14–1.5–6.* (Emphasis added.)

*Id.* at 183.

The trial court's judgment is reversed. The case is remanded to the court with instructions to enter an injunction against the City of Auburn Board of Zoning Appeals barring it from seeking legal advice from its attorney in private on matters other than those allowed under IC 5–14–1.–5–6(b)(2)(B).

## II.

### *Validity of Ordinance*

The plaintiffs also filed in the DeKalb Circuit Court, under the same cause number, an amended petition for declaratory judgment. The plaintiffs contend that Auburn's general zoning ordinance is legally invalid under IC 36–1–5–4 [8] because while the ordinance refers to a zoning map, it omits the zoning map, and no zoning map is on file in the city clerk-treasurer's office.

There being no factual dispute between the parties, each party made a motion for summary judgment. The trial court denied the plaintiffs' motion for summary judgment and granted the motion of the defendants.

Pursuant to T.R. 52(A), the trial court made Special Findings of Fact and Conclusions of Law. Those findings and conclusions which are pertinent to our determination of the case are as follows:

## "SPECIAL FINDINGS OF FACT

"The Court now renders Special Findings of Fact as follows:

"1. The chronology of pertinent events herein is as follows, to-wit:

"(a) In the year 1958, the Plan Commission of the City of Auburn and the Auburn City Council adopted a Master Plan and a Zoning Ordinance implementing said Master Plan, being Ordinance 786; that a Zoning Map was prepared in connection with such Zoning Ordinance, but neither said Ordinance nor Map were tendered for consideration to the Court.

"(b) On September 10, 1965, the affected parcel of land owned by the Defendant, Cedar Glen Joint Venture, was annexed to the City of Auburn by the City Council.

"(c) On November 30, 1967, the 1958 Zoning Ordinance No. 786, as well as the Map relating thereto was revised by the Auburn Plan Commission and approved by the Auburn City Council, and in connection with such amending Ordinanace [sic], an amended Zoning Map was prepared.

"(d) On April 16, 1968, amendments were made to revise and update the Auburn Zoning Ordinance by Ordinance 1016 and the Zoning Map of 1967 and 1968 was accordingly revised and updated by the Auburn Plan Commission and the Auburn City Council.

"(e) In 1974, Zoning Ordinance 1016 and the accompanying Map were revised and updated as a part of Zoning Ordinance 1016.

"(f) On April 5, 1967, the Defendant [sic], Russell Kruse, acquired the real estate upon which the Kruse residence is situated, near the real estate sought to be developed by the Defendant, Cedar Glen Joint Venture.

"(g) On November 26, 1968, the Defendant [sic], Robert Simon, acquired the real

8. IC 36–1–5–4 provides:
The legislative body of a unit may incorporate by reference into an ordinance or code any material. The ordinance or code must state that two (2) copies of the material are on file in the office of the clerk for the legislative body for public inspection, and the copies must be on file as stated for public inspection.

estate upon which the Simon residence is situated, near the real estate sought to be developed by the Defendant, Cedar Glen Joint Venture.

"(h) In the Fall of 1984, the Defendant, Cedar Glen Joint Venture, was formed and started the development of the land in question in December, 1984 which development precipitated this action and in the process of such development, the Defendant, Cedar Glen Joint Venture, has expended approximately $500,000.00 in such development.

"(i) On February 15, 1985, the Plaintiffs, Kruse and Simon, filed a complaint against the Board of Zoning Appeals of the City of Auburn and the City of Auburn alleging a violation of the Indiana Open Door Law by the Board of Zoning Appeals of the City of Auburn on January 17, 1985 and also asking for a permanent injunction against further violations of said Indiana Open Door Law; that said complaint further sought relief by declaratory judgment relating to the validity of Auburn City Zoning Ordinance 1016 and the Zoning Map which is a part thereof.

"(j) On September 11, 1985, the Plaintiffs filed an amended petition for Declaratory Judgment alleging that Zoning Ordinance 1016 of the City of Auburn is incomplete because the Zoning Map covering such Ordinance is absent from the Ordinance and is not on file in the Office of the Clerk–Treasurer of the City of Auburn, and alleging further the legal invalidity of Ordinance 1016 because the Zoning Map is absent from the Ordinance and not on file in the office of the Clerk–Treasurer of the City of Auburn.

"2. The Zoning Map enacted by the Auburn City Plan Commission and approved by the Auburn City Council with Ordinance 786 in 1958; as amended and updated by the City Plan Commission and Auburn City Council on November 30, 1967; and as amended and updated by the City Plan Commission and the Auburn City Council on April 16, 1968 by Ordinance 1016; and as further amended and updated in 1974 by the City Plan Commission and the Auburn City Council, has been maintained in the Auburn City Hall in the offices of the Auburn Building Commissioner and the Auburn City Engineer since the enactment of such successive Ordinances, with such Map being available for reference or use by any person or entity; that said Zoning Map, as amended and updated from time to time, has been regularly used and relied upon as the legal and accurate Map and Zoning Ordinance of the City of Auburn by City Boards and Commissions, City Officials, Abstractors, Title Insurance Companies and countless unnamed other persons and entities of the general public; that said Map as revised and updated in 1974 is presently the official Zoning Map of the City of Auburn, and that copies of said Map are readily available to anyone desiring such copies from the City Clerk–Treasurer, the City Building Commissioner and the Auburn City Engineer.

"3. The time lapse between the enactment of Ordinance 1016 and the institution of these proceedings to declare said Ordinance incomplete and legally invalid is sixteen (16) years nine (9) months and nineteen (19) days, nearly seventeen (17) years. No reasonable justification for such delay in challenging the 1968 Ordinance has been shown by the Plaintiffs. Since 1968, significant amounts of time and money have been expended by numerous developers, governmental agencies, countless public and private entities as well as the Defendnat [sic], Cedar Glen Joint Venture, in reliance on the validity of Ordinance 1016 and the Map which is a part thereof. A delay of nearly seventeen (17) years could demonstrate an implied waiver of the right to seek to invalidate Ordinance 1016, by knowing acquiescence in a condition that had existed for so many years. Not only has such delay caused prejudicial loss to the Defendant, Cedar. Glen Joint Venture, but also could engender a multiplicity of claims by parties to the sale or lease of real estate and other entities against the Defendant, the City of Auburn, which parties could claim prejudice because of their reliance upon Ordinance 1016. A few examples of the many areas where affected land owners and developers could claim prejudice to a granting of Plaintiffs' claim would be the

developers and owners of rights in Indian Village Apartment Complex, Indian Terrace Apartment Complex and Castle Courts Apartment Complex.

"4. The Plaintiffs have offered no reasonable evidence to justify the delay of seventeen (17) years in questioning the zoning of a parcel of land situtated [sic] in such close proximity to the properties of the Plaintiffs, to determine if a permitted use under the Auburn Zoning Law would adversely affect their enjoyment of their property....

"6. The alleged defects, which are technical irregularities, that the Plaintiffs now claim to have found were present and could have been discovered, claimed and challenged from 1967 as well as both before and after the passage of Ordinance 1016 on April 16, 1968, before so many property owners had relied upon the validity of said Ordinance. With the neglect or failure of the Plaintiffs to have inquired as to the zoning classification of the subject real estate now owned by the Defendant, Cedar Glen Joint Venture, until after the beginning of the development of the project by said Defendant and the expenditure of $500,000.00 thereon, it can be said that the Plaintiffs knowingly acquiesced in the existing zoning classification to which they now object.

"7. The Plaintiffs have been unwilling to seek to prevail in any of the other forums or under any of the other hearings which they may have chosen, particularly through the remedies available under other procedures, i.e. before the Board of Zoning Appeals with Court review; consequently, they have chosen this action for Declaratory Judgment. Declaratory relief is usually the means employed to challenge the validity of an entire Zoning Ordinance, ab initio, and not where the effort is merely to stop a specific project. Public policy becomes an issue in this proceeding where the only certain result if Plaintiffs should prevail would be chaos, confusion and controversy such as would hinder the economic growth and development of the entire area covered by the Zoning Ordinance which the Plaintiffs seek to invalidate.

"CONCLUSIONS OF LAW

"Upon the foregoing Special Findings of Fact, the Court now renders the following Conclusions of Law: ...

"5. Zoning Ordinance 1016 and the accompanying Zoning Map has been the subject of public acquiescence and reliance for nearly seventeen (17) years, and the reasonableness of a belated challenge, particularly on the basis of an irregularity and not an illegality, can further be questioned on the basis of laches or estoppel as well as overriding public policy considerations. The Plaintiffs had knowledge or the means of acquiring knowledge of the technical irregularities they now allege, such as to impose an implied waiver arising from knowing acquiescence in the existing status of Ordinance 1016 and the zoning of the real estate in question. Such considerations plus Plaintiffs' inexcusable delay in asserting their challenge to Ordinance 1016 and the prejudice caused to the Defendants bars Plaintiffs' action by the doctrine of laches.

"6. The Plaintiffs are also estopped by acquiesence [sic] from challenging the validity of Ordinance 1016, due to said Ordinance having been in effect for nearly seventeen (17) years prior to being challenged by the Plaintiffs and further due to Plaintiffs having purchased their homes nearly seventy [sic] (17) years prior to challenging the validity of said Ordinance....

"8. The 1968 Zoning Ordinance and Maps enacted therewith, together with their revisions and updates have been the subject of public acquiescence and reliance for nearly seventeen (17) years; thus, the reasonableness of a belated challenge thereto is highly questionable, and on the basis of estopel [sic] or overriding public policy considerations is inappropriate and not sustainable. Nothing has been produced by the Plaintiffs to justify such seventeen (17) year delay in challenging the 1968 Zoning Ordinance. To declare the 1968 Zoning Ordinance invalid would create an issue as to all activities undertaken in reliance upon said Ordinance, including plans and rezonings for the economic development and ex-

pansion of the City of Auburn. For the Plaintiffs to prevail in their attempt to invalidate an entire Zoning Ordinance, solely to accomplish their own individual purposes with respect to one particular piece of property, would cause prejudice to the entire community of the City of Auburn and would be violative of public policy considerations. Public policy forbids an attack upon irregularities, as opposed to illegalities, in procedure in connection with the adoption of such Ordinance when it has been enacted for a long period of time and a great number of property owners affected by it have conformed to its provisions and have fixed their status accordingly. This is especially true when the attack is by a party who, for such a long period of time knew, had available every opportunity to know and who had the duty to know in the exercise of reasonable prudence of the irregularity upon which the attack is predicated. Nothing has been produced by the Plaintiffs to in any way reasonably justify the seventeen (17) year delay in challenging the 1968 Zoning Ordinance 1016, and this action is violative of public policy considerations...."

Record at 296–99, 300–01, 302–03, 304–05 (corrections made in findings pursuant to court order, Record at 322–24).

The question of laches is one to be determined by the court in the exercise of its sound discretion. For a decision to be reversed on appeal, an abuse of discretion must be clearly demonstrated. *Bryant v. State ex rel. Van Natta* (1980), Ind.App., 405 N.E.2d 583, 585.

 The trial court did not abuse its discretion in finding that the plaintiffs' claim is barred by the doctrine of laches. Three elements which comprise the defense of laches are:

1. Inexcusable delay in asserting a right;

2. Implied waiver arising from knowing acquiescence in existing conditions; and

3. Circumstances causing prejudice to the adverse party.

*Id.*[9]

 Here, the plaintiffs did not initiate an action challenging the legal validity of the revised general zoning ordinance (Ordinance 1016) until February 15, 1985— nearly seventeen years after its enactment. While a lapse of time alone does not constitute laches, and other elements must be considered, *Irmscher v. McCue* (1987), Ind. App., 504 N.E.2d 1034, 1038, those other elements—knowledge and prejudice—are present here.

First, the plaintiffs may be charged with knowledge of and acquiescence in the content of the zoning ordinance. In *Chico Corp. v. Delaware–Muncie Bd. of Zoning Appeals* (1984), Ind.App., 466 N.E.2d 472, 475, *trans. denied,* it was held that persons are charged with knowledge of the law, including the content of zoning ordinances. Further, in *Hutter v. Weiss* (1961), 132 Ind.App. 244, 177 N.E.2d 339, the Court stated:

> "... [I]f the circumstances were such as to have put a person on inquiry, and the means of ascertaining the truth were readily available had inquiry been made, the neglect or failure to make such inquiry will charge the person with laches the same as though he had known the facts.

*Id.* 177 N.E.2d at 346.

Second, to allow the plaintiffs to prevail on their claim would indeed cause prejudice to the Defendant, Cedar Glen Joint Venture, as $500,000.00 has already been expended on the development of the property in question.

It would also cause prejudice to the Defendant, City of Auburn, causing "chaos, confusion and controversy such as would hinder the economic growth and development of the entire area covered by the Zoning Ordinance." (Record at 301.)

**9.** A defendant relying on laches must show a lack of diligence by the plaintiff and prejudice to the defendant; however, the plaintiff has the burden of explaining its delay in bringing suit. *Farries v. Stanadyne/Chicago Div.* (N.D.Ind. 1985), 618 F.Supp. 1324, 1326.

Therefore, the trial court is affirmed in its judgment.[10]

Reversed in part, and affirmed in part.

SHIELDS, P.J., and HOFFMAN, J., concur.

---

**10.** The doctrine of laches has been applied to declaratory actions by the Indiana Supreme Court. *See Bowser v. Tobin* (1939), 215 Ind. 99, 18 N.E.2d 773. In addition, several states have applied the doctrine of laches to bar challenges to zoning ordinances after the lapse of several years. *See Edel v. Filer Township, Manistee County* (1973), 49 Mich.App. 210, 211 N.W.2d 547, 549; *O.P. Corp. v. Village of North Palm Beach* (1973), Fla., 278 So.2d 593, 595; and *Baker v. State Bd. of Health of Alabama* (Ala. Civ.App.1983), 440 So.2d 1098, 1100.