Steven TURNER, Appellant (Plaintiff),

v.

The TOWN OF SPEEDWAY, Indiana and the Board of Metropolitan Police Commissioners of Speedway, Indiana, Appellees (Defendants).

No. 49A02–8707–CV–295.

Court of Appeals of Indiana, Second District.

Oct. 4, 1988.

Charles P. Gaddy, Gaddy & Gaddy, Indianapolis, for appellant.

Keith E. White, Barnes & Thornburg, Indianapolis, for appellees.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-plaintiff Steven Turner (Turner) appeals the trial court's grant of summary judgment in favor of appellees-defendants the Town of Speedway and the Board of Metropolitan Police Commissioners of Speedway (the Commissioners), claiming that the trial court erred in determining that the Commissioners were in substantial compliance with the Indiana Open Door Law and that defects in compliance with the Open Door Law could be cured by a subsequent meeting that was in full compliance with the law.

We reverse.

## FACTS

The facts are undisputed. In 1986, three positions for the rank of uniform sergeant became available within the Speedway Police Department. Turner was a candidate for promotion. The Commissioners, comprised of three members, resolved in a regular meeting held on September 2, 1986, that interviews for the three sergeants' positions would be held on September 11, 1986. A notice was posted announcing the positions and encouraging qualified personnel to apply. After the application deadline had closed, a schedule of the interviews for September 11 was posted.

The interviews, including Turner's, were conducted on September 11 in the Chief of Police's office. All three Commissioners and the Chief of Police were present. The record does not disclose whether the public was permitted to attend the interview sessions. However, no minutes or memoranda were kept of these interview sessions for public inspection. In the past, the Commissioners would discuss candidates immediately following the last interview. On this occasion, the Commissioners adjourned with little or no discussion because one Commissioner was leaving town early the next morning.

The Commissioners, instead, met for breakfast on September 23, 1986, at a pancake house and discussed all eight candidates for the promotion. No public notice was given, no agenda was posted, and no minutes were made of the breakfast gathering. The Commissioners claimed that no vote was taken, but it was decided which one of the Commissioners would make a motion at the next regularly held meeting to nominate three candidates for the promotion. Commissioner Robert O'Neal explained the discussion held at the breakfast gathering:

"There was first sort of a tacit, if that's the right word, between the three of us that we ought to give the corporals good consideration. Understand, which you disagree with apparently, we had no vote, no vote whatsoever here because of this outdoor [sic] law. You sit there like a bunch of dummies and not try to feel out the other guy, but [Commissioner] Cassady said that [Commissioner] Sipe said some good things about Krammer [a candidate] and he mentioned seniority of Turner and that he and the corporal have the same seniority, 13 years and three months. One has four and one has three. And so [Commissioner] Cassady said he couldn't agree with [Commissioner] Sipe on Krammer so we just left.

So on our October 7th meeting, I swear before God and anybody, I didn't have any more idea who [Commissioner] Cassady was going to nominate than you

did, and I don't think [Commissioner] Sipe did. Because we—you can't vote on these things until you are in the meeting room in front of everybody. I mean that's the motion that does it."

*Record* at 69–70.

A regular meeting, pursuant to statutory requirements, was held by the Commissioners on October 7, 1986 at the Speedway Town Hall. The agenda for the meeting contained the following item: "Announce appointment of Uniform Sergeants." *Record* at 105. The minutes from that meeting reflect that "Chairman Sipe reported that Board of Police Commissioners had interviewed all the applicants for the Uniform Sergeants' positions, reviewed each of their records and backgrounds, and *had met several times to make the very difficult decision* of promoting three of the applicants to these positions." *Record* at 106 (emphasis supplied). Commissioner Cassady moved to nominate the two corporal applicants and another officer, not Turner, to the rank of Uniform Sergeants. The resolution was unanimously adopted by the Commissioners.

In granting summary judgment, the trial court concluded the following:

1. That the meeting of [the Commissioners] on October 7, 1986, was in substantial compliance with the Indiana Open Door Law, IC 5–14–1.5–1 [to –7].

2. That any defect in compliance with the above-referenced act, which may have occurred at earlier meetings of [the Commissioners] was cured by the meeting of October 7, 1986.

3. There is no suggestion that access to the hearing by interested spectators was impeded or restricted in any manner.

4. There is no suggestion that [Turner], or any member of the public was restricted from presenting any information they wished to present.

5. There is no genuine issue of material fact relative to the violation of the Open Door Law...."

*Record* at 155.

## ISSUES

The Commissioners raise the following preliminary issue:

1. Is Turner precluded from raising any error regarding alleged violations of the Indiana Open Door Law at the September 11 and 23, 1986, meetings when Turner's complaint only alleges violations of the Indiana Open Door Law occurring on or about October 7, 1986?

Turner raises six issues, which we restate as essentially two issues:

2. Whether the failure to observe the statutory requirements of the Indiana Open Door Law at the meetings held on September 11 and 23 was cured by the meeting held by the Commissioners on October 7, 1986?

3. Whether a genuine issue of material fact exists regarding when the Commissioners made a final determination of the officers who would be promoted to uniform sergeant?

## DECISION

ISSUE ONE—Is Turner precluded from raising any error regarding alleged violations of the Indiana Open Door Law at the September 11 and 23, 1986, meetings when Turner's complaint only alleges violations of the Indiana Open Door Law occurring on or about October 7, 1986?

PARTY'S CONTENTION—The Commissioners maintain that Turner cannot complain of the alleged violations of the meetings prior to October 7 because the complaint was framed only in terms of violations in the October 7 meeting.

CONCLUSION—Indiana follows liberal pleading rules and the complaint is deemed amended to conform to the evidence.

The Commissioners' argument does not prevail because Ind.Rules of Procedure, Trial Rule 15, provides that the pleadings are amended to conform to the evidence. In the interest of promoting justice, litigants are granted considerable latitude during the formative stages of the litigation so that the issues may be drawn and refined within the broad discovery afforded

by the rules. *Colonial Mortgage Co. v. Windmiller* (1978), 176 Ind.App. 535, 376 N.E.2d 529. The trial court specifically considered the "earlier meetings" in its findings. The Commissioners failed to demonstrate any prejudice as the amendments did not change or add to any theories but corrected only evidentiary facts. *See Criss v. Bitzegaio* (1981), Ind., 420 N.E.2d 1221; *see also McAfee v. State ex rel. Stodola* (1972), 258 Ind. 677, 284 N.E. 2d 778. The trial court did not abuse its discretion in amending Turner's complaint to conform with the evidence even though Turner did not file a motion requesting leave of the court to file an amended complaint and the Commissioners did not consent to the amendments. *See Criss, supra.*

ISSUE TWO—Whether the failure to observe the statutory requirements of the Indiana Open Door Law at the meetings held on September 11 and 23 was cured by the meeting held by the Commissioners on October 7, 1986?

PARTIES' CONTENTIONS—Turner contends the Indiana Open Door Law applies to the interview sessions on September 11th and the breakfast gathering on September 23rd because the Commissioners received information, deliberated, and allegedly made a final determination on the promotions. He argues that the failure to maintain minutes of these meetings and the failure to post an agenda and give public notice of the September 23rd meeting were violations of the law and cannot be cured by a subsequent meeting which met the statutory requisites. He further claims the trial court erred in applying a "substantial compliance" standard.

The Commissioners respond that the alleged improprieties in the prior meetings are minor, technical violations, that they "substantially complied" with the law, and therefore summary judgment was proper. The Commissioners argue, in any event, that the Indiana Open Door Law, as it existed at the time of Turner's cause of action, did not allow a court to declare void a vote taken in an entirely proper open door meeting based upon alleged violations in prior meetings.

CONCLUSION—The deficiencies of the September 11th and 23rd "meetings" were not cured by the meeting held October 7, 1986.

The Indiana Open Door Law as it existed in 1986 is embodied in Ind. Code 5-14-1.5-1 to -7 (1982) (amended 1987 and 1988). In part, it provides that "all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them." IC 5-14-1.5-3. "Public notice of the date, time and place of any meetings ... shall be given at least forty-eight (48) hours before the meeting...." IC 5-14-1.5-5. If the public agency utilizes an agenda, the governing body is required to "post a copy of the agenda at the entrance to the location of the meeting prior to the meeting." IC 5-14-1.5-4(a). "As the meeting progresses, the following memoranda shall be kept: (i) the date, time and place of the meeting; (ii) the members of the governing body recorded as either present or absent; (iii) the general substance of all matters proposed, discussed or decided; and (iv) a record of all votes taken, by individual members if there is a roll call. The memoranda are to be available within a reasonable period of time after the meeting for the purpose of informing the public of the governing body's proceedings. The minutes, if any, are to be open for public inspection and copying." IC 5-14-1.5-4(b) (1982) (amended 1988).

A meeting that falls within the purview of the Open Door Law, is "a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business." IC 5-14-1.5-2(c); *see also Simon v. City of Auburn, Indiana, Bd. of Zoning Appeals* (1988), Ind.App., 519 N.E.2d 205; *Board of County Comm'rs v. Tinkham* (1986), Ind.App., 491 N.E.2d 578, *trans. denied.* "Official action" is defined broadly under the statute:

"(1) to receive information or to deliberate on public business;

(2) to make recommendations pursuant to statute, ordinance, or executive order;

(3) to establish policy;

(4) to make decisions on public business; or

(5) to take final action."

IC 5–14–1.5–2(d) (1982) (amended 1987); *see also Simon, supra; Riggin v. Board of Trustees of Ball State Univ.* (1986), Ind. App., 489 N.E.2d 616, *trans. denied.* " 'Deliberate' means a discussion which may reasonably be expected to result in official action defined under section 2(d)(2), (3), (4) or (5) of this chapter." IC 5–14–1.5–2(i) (1982) (amended 1987). "[A] vote by the governing body on any motion, proposal, resolution, rule, regulation, ordinance, or order" constitutes "final action." IC 5–14–1.5–2(g).

The September 11th interview session was a meeting under the Open Door Law. All three Commissioners were present and received information regarding the promotions. The September 23rd "breakfast gathering" was also a meeting contemplated by the Open Door Law because the Commissioners, at a minimum, deliberated on the promotions, i.e., held a discussion which could reasonably be expected to result in making a decision on the promotions. *See* IC 5–14–1.5–2(d) and (i); *see also Riggin, supra.* Obviously, the Commissioners failed to comply with the Open Door Law. No minutes were maintained for the September 11th and 23rd meetings, nor was there a public notice or agenda for the September 23rd meeting. *See* IC 5–14–1.5–4 and –5; *see also Simon, supra; Tinkham, supra; Riggin, supra.*

Meetings remain subject to the Open Door Law even though a subsequent hearing on the same subject matter is conducted. *Riggin, supra.* "The very purpose of the Open Door Law is to prevent secret hearings and 'Star Chamber' proceedings which shield the nature of testimony, the identity of witnesses and issues, and becloud the attitude of the triers." *Id.* at 623. However, the inquiry does not end with the determination that meetings subject to the Open Door Law were not in compliance with the requirements of statutory provisions.

In *Riggin, supra,* this court concluded that substantial compliance with the Open Door Law may in some circumstances be sufficient. Other jurisdictions have reached the same result. *See id.* and cases cited therein. In a 1987 amendment to IC 5–14–1.5–7, our legislature confirmed Judge Neal's use of "substantial compliance" as the proper standard to review violations under the Open Door Law. Several factors are considered, including the extent to which the violation denied or impaired access to a meeting, and prevented or impaired public knowledge or understanding of the business conducted in the meeting. IC 5–14–1.5–7(d) (Supp.1987).

The facts in this case are considerably different from those in *Riggin.* Here, there is no hierarchical system of administrative hearings and appeals. Riggin was fully informed of the charges against him and was afforded adequate opportunity to respond. Additionally, a multi-volume record of proceedings of the committee hearings regarding the charges against Riggin was maintained. Turner was not made aware of the factors considered by the Commissioners for the promotions, nor was any memorandum maintained that would enable Turner to discover what was discussed in the deliberations in the meetings of September 11th and 23rd.

The basic purpose of the Indiana Open Door Law is that deliberations of public agencies be conducted openly "in order that the citizens may be fully informed." IC 5–14–1.5–1 (1982) (amended 1987). The faulty procedures followed by the Commissioners in this case thwarted the sunshine effect contemplated by the Open Door Law. While the October 7 meeting at which the vote was taken was a meeting in full compliance with the law, such compliance is not an umbrella providing sufficient cover to validate the earlier meetings.

Our task is not yet complete, however. Having determined that the violations of the earlier meetings were not cured by the October 7 meeting, we must now examine what remedies are available to Turner under the statute.

■ Turner may not rely on the Open Door Law as amended in 1987. The 1987 amendment to IC 5–14–1.5–7 does not have retroactive application. This amendment provides that a final action "based in whole or in part upon official action taken ... at any meeting of which notice is not given in accordance with [IC 5–14–1.5–5]" could be declared void. IC 5–14–1.5–7(a)(3)(C) (Supp.1987). This amendment contained no effective date and no emergency clause, so it became effective September 1, 1987. IC 1–1–3–3 (1982)(amended 1987).

■ Our courts have observed a strict rule of construction against retrospective operation, and indulge in the presumption that the legislature intended statutes and amendments to operate prospectively only, unless the intention is unequivocably and unambiguously shown by necessary implication. *Arthur v. Arthur* (1988), Ind.App., 519 N.E.2d 230. Prospective operation is favored when rights are created by amendatory legislation. *Arthur, supra; McGill v. Muddy Fork of Silver Creek Watershed Conservancy Dist.* (1977), 175 Ind.App. 48, 370 N.E.2d 365. Even if a statute is remedial in nature, retroactive application will be denied unless there are compelling reasons to do so. *Gosnell v. Indiana Soft Water Serv.* (1987), Ind., 503 N.E.2d 879; *Arthur, supra.* The amendment to IC 5–14–1.5–7 provides a new right by permitting a plaintiff to attack a vote based upon violations in meetings at which a vote was not taken. The legislature did not see fit to make this statute retroactive. As prospective operation is favored, we see no compelling reason to apply the statute retroactively.

We conclude that Turner is limited to remedies available under the statute as it existed in 1986. IC 5–14–1.5–7(a) (1982) (amended 1987) provides that "[a]n action may be filed ... to enjoin continuing, threatened or future violations of this chapter, or to declare *void any action taken ... at any meeting of which notice is not given....*" (Emphasis supplied.) In *Tinkham, supra,* the trial court properly voided the decision to reject one contractor's bid and to accept another contractor's bid because the decision was made at a pre-meeting gathering and merely announced in a regular meeting. Thus, while Turner can properly seek an injunction for continuing or future violations, he can only attack the Commissioner's decision on the promotion if the *final* determination was made at a meeting in which notice was not given in accordance with IC 5–14–1.5–5 for that meeting.

ISSUE THREE—Whether a genuine issue of material fact exists regarding when the Commissioners made a final determination of the officers who would be promoted to uniform sergeant?

PARTIES' CONTENTIONS—Turner argues that a "fair reading" of the October 7 meeting and its agenda show that the final determinations regarding the promotions were made prior to the October 7 meeting.

The Commissioners claim that the testimony of Commissioner O'Neal unequivocally shows that the decision to promote the officers was made at the October 7 meeting.

CONCLUSION—A genuine issue of material fact exists regarding when the Commissioners made a final determination on the promotions to uniform sergeant.

■ Summary judgment may be granted only when there is no dispute or conflict regarding facts which are dispositive of the dispute. *Madison County Bank & Trust Co. v. Kreegar* (1987), Ind., 514 N.E.2d 279. In determining the propriety of summary judgment, we must accept as true all facts which support the nonmoving party and

resolve all doubts in his favor. *Id.* Neither should summary judgment be granted when a fact, which is crucial to the outcome of the case, is within the peculiar knowledge of the moving party because the entry of judgment forever forecloses the opportunity to challenge the credibility of the declarant before the finder of fact. *Blinn v. City of Marion* (1979), 181 Ind. App. 87, 390 N.E.2d 1066, *trans. denied.*

■ Summary judgment in this case is especially inappropriate because whether the promotion decision was made before the October 7 meeting is peculiarly within the Commissioner's knowledge. Demeanor evidence might serve to persuade a trier of fact to reject Commissioner O'Neal's testimony. In any event, the agenda and the minutes for the October 7 meeting reveal a conflicting inference that the decision may have been made prior to the public meeting on October 7 and the "announcement" of the promotions on that day may have been just that, an announcement of a decision already made.

We reverse and remand this case to the trial court for further proceedings consistent herewith.

SHIELDS, P.J., and SULLIVAN, J., concur.