**BLAKLEY CORPORATION, Appellant (Plaintiff Below),**

v.

**Stanley H. KLAIN, Appellee (Defendant Below).**

No. 49A02–8806–CV–00210.

Court of Appeals of Indiana, Second District.

May 30, 1989.

Sydney L. Steele, Susan P. Stuart, Lowe, Gray, Steele & Hoffman, Indianapolis, for appellant.

Bruce D. Brattain, Mark S. Zuckerberg, Ancel & Dunlap, P.C., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Blakley Corporation appeals an order granting summary judgment.

We affirm in part and reverse in part.

## FACTS

Plaintiff-appellant Blakley Corporation (Blakley) is an Indiana corporation engaged in supplying and installing flooring and carpeting in residential and commercial projects. S & K Construction Company, Inc. (S & K) was an Indiana corporation engaged in the construction of houses until it commenced bankruptcy proceedings in 1985. Defendant-appellee Stanley H. Klain (Klain) was the president and sole shareholder of S & K.

During 1985, S & K engaged Blakley to install flooring in several houses S & K built in the Indianapolis area. This appeal concerns seven houses for which Blakley supplied labor and materials. Two of the seven houses were built on land owned by S & K. S & K subsequently sold the improved real estate. For its work on these two houses, Blakley billed S & K $3,238.75, which S & K did not pay. The other five houses were built by S & K under contracts with lot owners. Blakley billed S & K $10,664 for its work on these houses which S & K also did not pay. The record does not reveal whether Blakley ever filed notices of intent to hold liens against any of the real estate. At each of the seven closings, Klain, as president of S & K, executed a vendor's affidavit which represented that "[t]here are no unpaid claims for labor done upon or materials furnished for the Real Estate in respect of which liens have been or may be filed." Record at 42–55.

Blakley seeks to hold Klain personally liable. Blakley sued Klain for damages under IC 34–4–30.5–5(b) (1988) and IC 34–4–30–1 (Supp.1984) (amended 1987). The trial court granted Klain's motion for summary judgment, and Blakley appeals.

## ISSUES

Blakley contends the trial court erred in granting summary judgment because genuine issues of material fact exist as to the falsity of the vendor's affidavits signed by Klain. Klain contends the undisputed evidence establishes he did not know that notices of intent to hold liens could be filed, an essential element of Blakley's causes of action. He further contends that Blakley is estopped from challenging the vendor's affidavits. For these reasons, he claims

the trial court properly granted him judgment.

## DECISION

In reviewing a trial court's award of summary judgment, we apply the same standard as that court. Summary judgment is appropriate only where there is no material issue of fact, and the moving party is entitled to judgment as a matter of law. *High v. United Farm Bureau Mutual Insurance Co.* (1989), Ind.App., 533 N.E.2d 1275, 1276, *transfer pending; Progressive Construction and Engineering Co. v. Indiana and Michigan Electric Co.* (1989), Ind.App., 533 N.E.2d 1279, 1282, *transfer pending.* The judgment will be reversed if the record discloses a genuine dispute over a material fact or inference, or an incorrect application of the law. *Pugh's IGA, Inc. v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194, 1196–97, *transfer pending.* However, summary judgment is proper where there is no dispute regarding facts which are dispositive of the matter and the movant is entitled to judgment as a matter of law. *Lee v. Schroeder* (1988), Ind.App., 529 N.E.2d 349, 350, *transfer pending.* Summary judgment will be affirmed on any theory or basis supported by the record. *Watson v. Medical Emergency Services Corp.* (1989), Ind.App., 532 N.E.2d 1191, 1193, *transfer pending.*

Blakley seeks to recover under two Indiana statutes. IC 34–4–30–1 provides that "a person [who] suffers a pecuniary loss as a result of a violation of IC 35–43 ... may bring a civil action against the person who caused the loss...."[1] Indiana's civil RICO statute, IC 34–4–30.5–5(b), provides that "[a]n aggrieved person may bring an action against a person who has violated IC 35–45–6–2 ... for damages suffered as a result of corrupt business influence."[2]

1. Blakley asserts that Klain's conduct in signing the vendor's affidavits constitutes deception, under IC 35–43–5–3(a)(2) (1988) ("A person who ... knowingly or intentionally makes a false or misleading written statement with intent to obtain property ... commits deception...."), and criminal conversion, under IC 35–43–4–3 (1988) ("A person who knowingly or intentionally exerts unauthorized control over property of an-

other person commits criminal conversion ...").

2. Under IC 35–45–6–2(a)(1) (1988), "corrupt business influence" requires "a pattern of racketeering activity." Blakley alleges that Klain's repeated acts of perjury in the vendor's affidavits constitute a pattern of racketeering activity. Perjury is defined as the making of "a false, material statement under oath or affirmation,

## I.

The essence of Blakley's claims is that it was injured as a result of Klain's conduct in executing the vendor's affidavits because the affidavits extinguished Blakley's ability to assert liens against the real estate.

Its argument is without merit as to the five houses built by S & K as a general contractor for the owners of the lots on which the houses were built.

IC 32–8–3–1 (1988) provides that a subcontractor who performs labor or furnishes materials in the erection of a house, may acquire a lien upon the house and upon the interest of the owner of the land on which the house stands. Whether the claim is due or not, the lien is perfected by filing a notice of intent to hold a lien in the recorder's office of the county within sixty (60) days after performing the labor or providing the materials. IC 32–8–3–3 (1988).[3] However, an exception to the sixty (60) day time period applies if the house is a single or double family residence. Under IC 32–8–3–1, para. 5 (1988):

> No lien for material or labor in original construction shall attach to real estate purchased by an innocent purchaser for value without notice, provided said purchase is of a single or double family dwelling for occupancy by the purchaser, unless notice of intention to hold such lien be recorded as provided in this chapter prior to the recording of the deed by which such purchaser takes title.

Due to this provision, the time for filing a notice of intent to hold a lien may be substantially less than sixty (60) days in order to put an otherwise innocent purchaser on notice of the existing or pending claim.

Here, five of the seven houses at issue were built by S & K as a general contractor for the owners of the lots on which the houses were built. Blakley's reliance on the innocent purchaser for value exception as a basis for his claim that the vendor's affidavits extinguished his lien rights is meritless as to these five houses. These lot owners were not purchasers of the improved real estate by deed as required by IC 32–8–3–1, para. 5 and hence, the protection afforded by paragraph 5 was not available to them. Therefore, Klein's affidavits did not affect Blakley's right to perfect liens; accordingly, the affidavits were not the cause of Blakley's injuries and the grant of summary judgment was proper as to these five houses. However, this is not true as to the remaining two houses. The record is devoid of facts negating Blakley's claim that the individuals who purchased improved real estate from S & K were innocent purchasers. Thus Klain's argument that his conduct did not injure Blakley does not entitle him to summary judgment as to those two houses.

## II.

An essential element of Blakley's cause under both the RICO and IC 34–4 theories is a showing that the vendor's affidavits signed by Klain contained a knowing or intentional false or misleading statement—i.e., that a timely notice of intent to hold a lien could not be filed against the property.[4] The crux of Klain's argument is that his statement was not knowingly or intentionally false because he believed Blakley had no lien rights as a result of the parties' course of dealing and credit relationship. He based this belief on the facts that notices of intent to hold liens were never filed; that Blakley previously acquiesced in the sale of improved real estate by S & K prior to the expiration for the time to file a

knowing the statement to be false or not believing it to be true." IC 35–44–2–1 (1988).

**3.** In addition, IC 32–8–3–1, para. 4 (1988) requires that in original construction of a single or double family dwelling for intended for occupancy by the owner upon whose real estate the construction takes place, any entity who provides materials and/or performs services to anyone other than the owner or owner's representative, shall furnish the owners with a written notice of the delivery or labor and the existence of lien rights within sixty (60) days of the first delivery or labor as "a condition precedent to the right of acquiring a lien...."

**4.** A claim arises upon providing materials or performing labor. The notice of intent to hold a lien must be recorded within sixty (60) days of providing the materials or performing the labor whether or not the claim is due. IC 32–8–3–3 (1988).

timely notice of intent to hold a lien; and that while S & K's debts to Blakley were billed on an individual project basis, they were consolidated each month into a single payment, and Blakley thereby waived its right to file a timely notice of intent to hold a lien against any individual project. Blakley responds that at the time the affidavits were executed it still could have filed timely notices against the real estate [5] except for S & K extinguishing this right by conveying the real estate to innocent purchasers for value without notice.

The undisputed facts do not compel the conclusion that Klain did not knowingly or intentionally make a false statement pertaining to potential liens.

The only uncontroverted facts relevant to Blakley's state of mind concerns the parties' course of dealing: S & K paid Blakley with a single check each month, rather than separately for each project; Blakley accepted S & K's practice of paying invoices it received prior to the 23rd of the month by the 10th of the following month, and paying invoices received after the 23rd by the 10th of the second succeeding month even though the invoices stated "net 30 [days]".

There is no evidence that notices of intent to hold liens previously had not been filed or that Blakley knew S & K previously had sold improved real estate prior to the expiration of the time Blakley could have filed timely notices had Blakley not been paid.

Whether or not Klain believed, based on the uncontroverted facts, that S & K's debt to Blakley for each individual project had been extinguished in favor of a consolidated account payable each month, and that Blakley had thereby waived its right to assert liens on individual projects, is a question of Klain's state of mind as well as his "knowledge" of Blakley's state of mind. Summary judgment is an inappropriate mechanism to resolve "state of mind" or "knowledge" unless, of course, the undisputed facts support but one reasonable inference. *Cf. Turner v. Town of Speedway* (1988), Ind.App., 528 N.E.2d 858, 864. That is not the situation here.

Neither can the trial court's judgment be sustained under a theory that Blakley waived its lien rights and, therefore, it could not have been injured by Klain's executing the affidavits. The uncontroverted facts do not compel the conclusion Blakley waived its lien rights. The only undisputed facts concern the parties' course of billing and payment. Assuming, but not deciding, that waiver of lien rights can occur from a course of conduct, these facts, by themselves, do not support any reasonable inferences as to Blakley's intention to secure by lien, or to waive the right to do so, any sums which it could identify as to a particular project that remained unpaid up to sixty (60) days after Blakley last provided material or labor for homes built for S & K, upon S & K-owned lots, either prior to conveyance by S & K or after a conveyance to a purchaser who was not an innocent purchaser of the improved real estate. Indeed, the record is devoid of any evidence that event had ever occurred before. As a matter of law, the uncontroverted facts, without more, do not constitute relinquishment by Blakley of its existing lien rights.

Finally, Klain argues Blakley should be estopped because Blakley was aware Klain was executing vendor's affidavits and that Klain was selling real estate prior to the time in which Blakley could timely file his notice of intent to hold a lien. There is no evidence in the record on this issue. Therefore, it could not be a basis for judgment.

The trial court correctly granted summary judgment against Blakley as to its claims involving the five houses built by S & K as general contractor for the lot owners. With respect to the other two houses, however, a genuine dispute exists as to Klain's knowledge of the alleged falsehood of the vendor's affidavits, and Klain has not demonstrated that he is entitled to judgment as a matter of law.

5. When Klain executed the affidavits the 60–day limitation period provided by IC 32–8–3–3 (1988) had not yet expired.

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

SULLIVAN and GARRARD, JJ., concur.