**TOWN OF MERRILLVILLE,**
**Appellant–Defendant,**

v.

**Peter BLANCO III, Appellee–Plaintiff.**

No. 45A03–9509–CV–308.

Court of Appeals of Indiana.

Oct. 20, 1997.

Rehearing Denied Jan. 29, 1998.

James A. Greco, Greco Pera Bishop & Vernia, Merrillville, for Appellant–Defendant.

James M. Spivak, Schererville, for Appellee–Plaintiff.

## OPINION

HOFFMAN, Judge.

Appellant-defendant Town of Merrillville appeals the trial court's judgment in favor of appellee-plaintiff Officer Peter Blanco III on issues involving violations by the Town of Merrillville of the Indiana Open Door Law. The facts most favorable to the judgment are recited below.

On June 3, 1992, charges were filed against Officer Peter Blanco III ("Blanco") as a result of an incident that occurred on April 25, 1992. The incident concerned Blanco's arrest of Randy J. Williams for operating a vehicle while intoxicated. It was alleged that Blanco used excessive force while admitting Williams into the Lake County Jail.

The evidence discloses that after placing Williams under arrest, Blanco took Williams to the jail, placed him in the secured area, and asked him to empty his pockets and take off his shoes and belt. For the most part Williams complied with Blanco's order; however, Williams refused to surrender his wallet. When Blanco reached for Williams' wallet, Williams swung his arm around so that Blanco could not take his wallet. Blanco signaled to another officer that he needed help and, again, attempted to reach for Williams' wallet. Williams swung his arm at Blanco a second time. Thereafter, Blanco grabbed Williams around the neck, spun him around, and brought him down to the floor. While Williams was on the floor, Blanco struck him with his fists in the lower back. Shortly thereafter, other officers entered the secured area to assist Blanco. With the help of the other officers, Williams was subdued, handcuffed, and removed to a holding cell.

As a result of the April 25th incident, Blanco, in a letter dated June 3, 1992, was charged by Chief of Police Daniel Demmon with seven charges including:

1. Violation of Federal or State law, or County or Municipal ordinance.
2. Conduct unbecoming an officer or civilian of the Department.
3. Any act which brings or tends to bring the individual or the department into disrepute.
4. A violation of rules.
5. Conduct injurious to the public peace or welfare.
6. Breach of discipline.
7. You specifically used excessive force in violation of department policy.

The specifics of this charge are that on April 25, 1992, you used excessive force without provocation upon the person of Randy J. Williams.

*Commission Transcript* at 2. The June 3rd letter further informed Blanco that he was to appear before the Merrillville Board of Metropolitan Police Commissioners ("Commission") on June 6, 1992, in reference to the investigation of the charges.

At the June 6, 1992 hearing, Chief Demmon requested that Blanco be suspended

without pay until a hearing was held on the charges filed against him. After taking a ten minute break to consider the arguments presented during the hearing, the Commission voted to suspend Blanco without pay pending a hearing on the charges. No notices of the June 6th hearing were posted prior to the meeting's occurrence. The building in which the meeting was held was not handicap-accessible.

Approximately two weeks later, discovery issues arose between the parties to the action. To resolve the matter, a special meeting was to be set for Monday, June 21, 1992. However, it was necessary to hold the meeting on Friday, June 19, 1992, because one of the attorneys was scheduled to be out of town on June 21st. At the June 19th meeting, a procedural meeting was set for July 1, 1992. Because the June 19th hearing occurred on the same day that it was set, no notices were posted. The hearing was not held in a handicap-accessible location.

Three additional issues were determined at the June 19th meeting. First, the Commission denied Blanco's request for the production of certain individuals' police personnel files. Second, the Commission determined that Blanco had the right to conduct the depositions he requested. Third, the Commission denied Blanco's motion asking that the Commission disqualify itself as well as Blanco's motion asking the Commission to recuse itself, finding that there was no procedure in place for such motions, and that the Commission was not biased against Blanco.

On July 1, 1992, the procedural meeting, that was set during the June 19th meeting, was held. The July 1st meeting, once again, concerned discovery issues. The meeting started as a public meeting and then went into executive session. During the "closed" session, Blanco presented certified questions that had been objected to by counsel for Chief Demmon and for Captain Jerry McCory during the taking of Demmon's and McCory's depositions. After hearing arguments, the Commission determined that the witnesses should not be compelled to answer the questions.

Following the Commission's ruling on the certified questions, Blanco filed with the Lake Superior Court an emergency petition compelling discovery. The judge heard arguments on July 6, 1992, and, on the same day, ordered that Demmon answer three of the questions asked of him during his deposition. Demmon was not required to answer any of the remaining questions. The judge also ordered that McCory not be required to answer any of the objected to questions asked of him during his deposition.

Following the superior court judge's decision, the Commission scheduled a closed hearing on August 8, 1992 to begin the formal trial as to the seven charges filed against Blanco. At the commencement of the August 8th hearing, the Commission ruled, and both parties agreed, that the hearing would be held in public.

During the hearing on the charges against Blanco, which lasted from August 8th through August 11th, both sides were given the opportunity to make opening statements, call witnesses, present evidence, cross-examine witnesses, challenge the evidence admitted, and make closing arguments. Upon the conclusion of the evidence and upon motion of Blanco's counsel, the Commission dismissed three of the seven charges pending against Blanco for lack of evidence. After recessing to deliberate on the remaining charges, the Commission reconvened and a vote was taken. The Commission, by a vote of two to one on each count, found Blanco guilty of the four remaining charges: counts two, three, four, and seven.

Thereafter, the Commission turned to the issue of Blanco's punishment. During the "sentencing phase" of the proceeding, Demmon was called as a witness for the Town of Merrillville. After direct examination was completed, Blanco's counsel commenced to cross-examine Demmon. On cross-examination, however, objections were made to Blanco's counsel's questions, and the Commission subsequently ruled the questions to be outside the scope of direct examination. Having no more questions to ask, Blanco's counsel ended his cross-examination of Demmon.

During Blanco's presentation of evidence at the "sentencing phase," Blanco's counsel called Demmon. During counsel's direct ex-

amination of Demmon, objections, again, were made to Blanco's counsel's line of questioning. The objections were sustained, and the Commission ordered Blanco's counsel to make an offer to prove.

Despite the Commission's order, Blanco's counsel refused to make the offer to prove and insisted upon asking the questions. The Commission advised Blanco's counsel that if he continued his line of questioning, the Commission would dismiss the witness. When Blanco's counsel continued his line of questioning of Demmon, the Commission dismissed the witness, recessed the proceeding, and retired to deliberate. Upon reconvening, the Commission unanimously decided that Blanco should be terminated from the Merrillville Police Department.

The cause that is the subject of this appeal was originally filed under three separate cause numbers. Upon motion by the Town of Merrillville, the three cause numbers were consolidated. Once consolidated, the issues were tried before Special Judge John Richert (deceased) on June 27, 1994. Following a hearing, the trial court issued its Findings of Fact and Conclusions of Law and found that the Commission violated Indiana's Open Door Law for failing to give notice of the hearings held on June 6, 1992 and June 19, 1992. The trial court also found that none of the meetings were held in a handicap-accessible location, and that Blanco was denied the right to introduce evidence in his own behalf at the "sentencing phase" of the hearings. The trial court then ordered that all policies, decisions and final actions taken by the Town of Merrillville were void, invalid and of no force and affect.

On March 6, 1995, the Town of Merrillville filed its motion to correct error. On March 10, 1995, Blanco filed his motion to correct error. Both motions were denied. This appeal ensued.

On appeal, the Town of Merrillville raises the following issues for our review:

(1) whether the trial court erred in finding that the Commission violated the Indiana Open Door Law; and

(2) whether the trial court erred in holding that public policy required that the pol-

icies, decisions, and final actions of the Commission be voided.

On cross-appeal, Blanco raises the following issue: whether the trial court erred in finding that the Commission's use of an executive session for deliberations was permissible.

The Town of Merrillville ("Town") first maintains that the trial court erroneously found a violation of the Indiana Open Door Law. The Town argues that the Commission, which initiated the proceedings against Blanco, provided notice to the public and the press pursuant to its standard operating procedures. The Town further maintains that because the public and press were present at the hearings and no disabled person was denied access to the hearings, the purposes and intent of the Indiana Open Door Law were satisfied.

An appeal from a negative judgment determines the standard of review by this Court. *Pepinsky v. Monroe County Council,* 461 N.E.2d 128, 135 (Ind.1984). We will not reverse the judgment of the trial court unless it is contrary to law. *Id.* In determining whether the trial court's judgment is contrary to law, we will consider the evidence in the light most favorable to the appellee together with all the reasonable inferences to be drawn therefrom. *Id.* The judgment will be reversed only if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Id.*

Section 5 of the Indiana Open Door Law ("Open Door Law") provides:

(a) Public notice of the date, time and place of any meetings, executive sessions, or of any rescheduled or reconvened meeting, shall be given at least forty-eight (48) hours (excluding Saturdays, Sundays, and legal holidays) before the meeting. This requirement does not apply to reconvened meetings (not including executive sessions) where announcement of the date, time, and place of the reconvened meeting is made at the original meeting and recorded in the memoranda and minutes thereof, and there is no change in the agenda.

(b) Public notice shall be given by the governing body of a public agency by:

(1) posting a copy of the notice at the principal office of the public agency holding the meeting or, if no such office exists, at the building where the meeting is to be held; and

(2) depositing in the United States mail with postage prepaid or by delivering notice to all news media which deliver by January 1 an annual written request for such notices for the next succeeding calendar year to governing body of the public agency. If a governing body comes into existence after January 1, it shall comply with this subdivision upon receipt of a written request for notice.

IND.CODE § 5–14–1.5–5 (1991 Supp.).

In interpreting a statute, we are to ascertain and give effect to the intent of the legislature. *Simon v. Auburn, Bd. of Zoning Appeals,* 519 N.E.2d 205, 211 (Ind.Ct.App. 1988). In determining the legislative intent, the language of the statute itself must be examined, including the grammatical structure of the clause or sentence in issue. *Id.* If possible, effect and meaning must be given to every word, and no part of the statute is to be held meaningless if that part can be reconciled with the rest of the statute. *Id.* Further, a statute is to be examined and interpreted as a whole, giving common and ordinary meaning to words used in the English language and not over-emphasizing a strict literal or selective reading of individual words. *Id.*

Indispensable to ascertaining the legislature's intent is a consideration of the goals sought to be achieved and the reasons and the policy underlying a statute. *Id.* It is, therefore, necessary to view a statute within the context of the entire act, rather than in isolation, when construing the statute. *Id.* In construing a statute, it cannot be presumed that a legislature expects its enactments to be applied in an illogical or absurd manner, inconsistent with its underlying policies and goals. *Id.*

The Open Door Law requires, *inter alia,* that 48–hour notice must be given for public meetings. IND.CODE § 5–14–1.5–5(a). This notice must be posted. IND.CODE § 5–14–1.5–5(b)(1). The basic purpose of the Open Door Law is that deliberations of public agencies be conducted openly "in order that the citizens may be fully informed." IND.CODE § 5–14–1.5–1 (1988 Ed.). The legislature has decreed, as a matter of substantive law, that action taken by the Town in violation of the Open Door Law is void. IND.CODE § 5–14–1.5–7.

In the instant case, there is no dispute that the June 6th and June 19th meetings are subject to the requirements of the Open Door Law. From the record it appears that the Town violated the technical requirements of the Open Door Law by failing to post notice of the meetings at the Merrillville City Hall at least 48 hours in advance. A member of the Merrillville police commission, the former Chief of Police of Merrillville, and the secretary to the Chief of Police testified before the Lake Superior Court. None recalled whether notice of the meetings was posted. This Court's inquiry, however, does not end with the determination that meetings subject to the Open Door Law were not in compliance with the requirements of statutory provisions. *Turner v. Town of Speedway,* 528 N.E.2d 858, 862 (Ind.Ct.App.1988).

In *Riggin v. Bd. of Trustees of Ball State Univ.,* 489 N.E.2d 616 (Ind.Ct.App.1986), *trans. denied,* this Court concluded that substantial compliance with the Open Door Law may in some circumstances be sufficient. The cause in *Riggin* arose when Ball State University acted to discharge a tenured member of its faculty, appellant Richard Riggin. Formal charges were brought against Professor Riggin by his departmental dean. An ad hoc hearing committee of the University Senate Judicial Committee conducted extensive hearings and recommended that Riggin be terminated. After a review of the hearings by the Board of Trustees, Riggin's employment was terminated.

Riggin filed two actions, one which sought injunctive relief requiring the hearing committee to conduct open hearings, alleging that the proceedings were covered by the Indiana Open Door Law. The trial court granted summary judgment for the Board of Trustees. In affirming the trial court's decision, this Court found that the hearing committee's action was advisory and that subse-

quent proceedings by the trustees were held in substantial compliance with the Open Door Law. In so finding, this Court stated the following:

> The proceedings at issue involve a private contractual matter between Riggin and Ball State which had only a secondary interest to the general public. The contractual provisions included the regulations of the University as set forth in the Faculty Handbook. Those regulations stated that disciplinary proceedings could be closed.... There is no suggestion that access to the hearing by interested spectators was impeded or restricted in any manner.... There is likewise no suggestion that Riggin was prejudiced by the manner in which the hearing was conducted.

> Though not provided as a matter of right, Riggin, following the decision and report made by the ad hoc committee, was in fact afforded a full review of his case by the Board of Trustees. The individual trustees stated that they had read the transcript. That review hearing complied with the Open Door Law. Riggin, appearing in person and by counsel and, without restriction, presented what he wished to present. Clearly there has been no prejudice to Riggin in the presentation of the merits of his case, and in fact, he claims none. His argument is merely technical in that his complaint regards the lack of public notice and the failure to post an agenda prior to the ad hoc committee hearing.

\*   \*   \*   \*   \*   \*

> The clear policy of the Open Door Law as stated in IND.CODE 5–14–1.5–1 is 'that the deliberation and actions of public agencies be conducted and taken openly....' We hold that there has been substantial compliance with that Act.

*Riggin*, 489 N.E.2d at 623–23.

In *Turner*, this Court was faced with the issue of whether failure to observe the statutory requirements of the Open Door Law at two earlier meetings was cured by a later meeting. No minutes were maintained for the two earlier meetings, nor was there a public notice or agenda for one of the earlier meetings. In determining that the deficiencies of the earlier meetings were not cured by the later meeting, we stated that:

> In *Riggin, supra*, this court concluded that substantial compliance with the Open Door Law may in some circumstances be sufficient. Other jurisdictions have reached the same result. *See id.* and cases cited therein. In a 1987 amendment to IC 5–14–1.5–7, our legislature confirmed Judge Neal's use of 'substantial compliance' as the proper standard to review violations under the Open Door Law. Several factors are considered, including the extent to which the violation denied or impaired access to a meeting, and prevented or impaired public knowledge or understanding of the business conducted in the meeting. IC 5–14–1.5–7 (Supp.1987).

> The facts in this case are considerably different from those in *Riggin.* Here, there is no hierarchical system of administrative hearings and appeals. Riggin was fully informed of the charges against him and was afforded adequate opportunity to respond. Additionally, a multi-volume record of proceedings of the committee hearings regarding the charges against Riggin was maintained. Turner was not made aware of the factors considered by the Commissioners for the promotions, nor was any memorandum maintained that would enable Turner to discover what was discussed in the deliberations in the meetings of September 11th and 23rd.

> ... The faulty procedures followed by the Commissioners in this case thwarted the sunshine effect contemplated by the Open Door Law. While the October 7 meeting at which the vote was taken was a meeting in full compliance with the law, such compliance is not an umbrella providing sufficient cover to validate the earlier meetings.

*Turner*, 528 N.E.2d at 862.

In *Pepinsky*, citizens appealed from an interlocutory order of the trial court dismissing a public lawsuit for failure to post a bond. On appeal, our supreme court was faced with, *inter alia*, the question of whether the trial court's decision that the county council had complied with the notice provisions of the Open Door Law was contrary to the law

in light of the evidence presented. Our supreme court determined that the county council complied with the provisions of the Open Door Law for the following reasons: the Auditor posted a notice of the November 17th meeting on the bulletin board on the main floor of the county courthouse where notices of that type were customarily placed; the Auditor also notified the local newspaper about the meeting; the hearing was held in the room of the courthouse where the council usually met; the notice on the bulletin board gave the time of the meeting and the subjects to be covered; the meeting and its proposed subject was publicized through news articles in the newspaper on November 7th, 8th, and 17th; Pepinsky and approximately 25 members of the public and members of the news media attended the meeting; no witnesses testified that they had hoped to attend the hearing but failed to do so because they did not have proper notice; and no one complained that notice had not been proper and the meeting should not proceed. *Pepinsky*, 461 N.E.2d at 135–36.

■ Contrary to the *Riggin* and *Pepinsky* decisions, we here find that the trial court could find on this record that the Town violated the notice and location requirements of the Open Door Law in that adequate notice of the hearings was not given. The facts disclose that on June 6, 1992, a hearing was held by the Commission during which disciplinary charges were filed against Blanco, and a motion was passed suspending Blanco from the police force without pay until a subsequent hearing was held. No notice of the June 6th meeting was provided. Due to a scheduling conflict, on June 19, 1992, a hearing was had which was arranged on the same day of the hearing. The hearing was originally scheduled to take place on June 21st. No notice of this hearing was given pursuant to IND.CODE § 5–14–1.5–5, and there was no threatened disruption of governmental activity or any threatened injury to person or property which necessitated circumvention of the notice requirement. *See* IND.CODE § 5–14–1.5–5(d).

■ Unlike *Riggin*, the issue involved in the instant case, the termination of a police officer from a local police department, involves a public matter which is of primary interest to the general public. Because of the Commission's failure to give adequate notice, access to the hearings by interested spectators could have been impeded or restricted. Furthermore, as was held in *Turner*, the deficiencies of the June 6th and June 19th hearings could not be cured by the later hearings which complied with the Open Door Law. *See also*, IND.CODE § 5–14–1.5–7(c) ("If a court finds that a governing body of a public agency has violated this chapter, it may not find that the violation was cured by the governing body by only having taken final action at a meeting that complies with this chapter.").

■ Additionally, the Town contends that its failure to hold the hearing in a handicap-accessible location was a harmless variation from the strict requirements of the Open Door Law because the variation did not interfere with the general purposes of the law. According to the Town, it substantially complied with the handicap-accessibility requirement because it had a policy to accommodate any disabled individual who sought to attend a Commission hearing, and because there was no evidence that anyone was denied access to the hearings because of a disability.

■ However, IND.CODE § 5–14–1.5–8(d) (1992 Supp.) provides that "[a] public agency may not hold a meeting at a location that is not accessible to an individual with a disability." The statute makes it clear that such hearings are to be held in facilities that permit barrier-free physical access to the physically handicapped. It does not include allowances for agencies with plans to accommodate disabled individuals when those individuals express an interest in attending the hearings. The hearings of the instant case were held on the third floor of a building that was not handicap accessible.

In view of the specific circumstances in question here, we are unable to conclude that the notice given by the Town and the location in which the hearings were held satisfied the requirements of the Open Door Law. The trial court did not err in so finding.

Having determined that the Town violated the Open Door Law, we next determine

whether the trial court erred in holding that the policies, decisions, and final actions of the Commission were void.

IND.CODE § 5–14–1.5–7 (1992 Supp.) states in pertinent part:

(a) An action may be filed by any person in any court of competent jurisdiction to:

\* \* \* \* \* \*

(3) declare void any policy, decision, or final action:

\* \* \* \* \* \*

(C) that is based in whole or in part upon official action taken at any executive session in violation of section 3(a) of this chapter or at any meeting of which notice is not given in accordance with section 5 of this chapter; or

(D) taken at a meeting held in a location in violation of section 8 of this chapter.

As we stated above, IND.CODE § 5–14–1.5–8(d) provides that "[a] public agency may not hold a meeting at a location that is not accessible to an individual with a disability."

■ Whether to declare void any policy, decision, or final action taken by a public agency in violation of the Open Door Law is a matter left to the court's discretion. Among the factors the trial court considers in reaching this determination are: 1) the extent to which the violation affected the substance of the action, denied or impaired access to any meetings that the public had a right to observe, and prevented or impaired public knowledge or understanding; 2) whether voiding of the action is a necessary prerequisite to a substantial reconsideration of the subject matter; and 3) the balancing of the remedial benefits gained by effectuating the public policy of the state declared in the "Purpose" section of the Open Door Law against the prejudice likely to accrue to the public if the action is voided (including the extent to which persons have relied upon the validity of the challenged action). *See* IND. CODE § 5–14–1.5–7(d)(1)—(3).

■ Here, in its Conclusions of Law, the trial court stated, *inter alia:*

1. That the Merrillville Board of Metropolitan Police Commissioners held hearings on June 6, 1992 and June 19, 1992 which violated Indiana's Open Door Law, due to failure of notice thereof.

2. That all of said meetings were not accessible to persons with disabilities and handicaps as is required by law.

\* \* \* \* \* \*

4. That the said violations affected the substance of the policies, decisions, and final actions taken by the Defendants on those occasions.

5. That the violations denied public knowledge and understanding of the public's business.

6. That it is necessary to void the policies, decisions, and final actions taken by the Defendants as a necessary prerequisite to a substantial reconsideration of the subject matter considered, which should be accomplished within statutory and legal requirements. That the public interest will be served by voiding the policies, decisions, and final actions of the Defendants, which were taken at said meetings. That the remedial benefits gained by voiding the policies, decisions, and final actions of the Defendants taken during said meetings are not likely to prejudice the public but will benefit the public in allowing them to become better informed, in governmental operations.

In its Judgment, the trial court ordered that "all policies, decisions and final actions taken by the Defendants in this matter are void, invalid, and of no force and affect[.]"

The clear language of the Open Door Law evidences the legislative policy of this state that all meetings of governing bodies, with certain exceptions, are to be open to the public and held in locations that are handicap accessible. Consequently, a threatened violation of the Open Door Law is both unlawful and against public interest. *Common Council of City of Peru v. Peru Daily*, 440 N.E.2d 726, 733 (Ind.Ct.App.1982). Based upon the evidence at record, we here find that the trial court did not abuse its discretion in invalidating all action taken at the hearings pursuant to IND.CODE § 5–14–1.5–7.

■ The Town also argues that the trial court erred in finding that the Commission

denied Blanco the right to present evidence on his own behalf during the sentencing phase of the proceedings. It is well settled that the opportunity to be heard is a fundamental requisite of due process. *Anderson Federal Savings and Loan Association v. Gdn. of Davidson*, 173 Ind.App. 549, 555, 364 N.E.2d 781, 785 (1977). The proceedings before administrative bodies, however, are not required to be conducted with all of the procedural safeguards afforded by judicial proceedings, even when such proceedings are judicial in nature. *City of Mishawaka v. Stewart*, 261 Ind. 670, 676, 310 N.E.2d 65, 68 (1974). We accept a lower standard in proceedings before quasi-judicial bodies because it would be unworkable to do otherwise. *Id.* There are, nevertheless, standards below which we should not go. *Id.* These standards, logically, should be at the highest level that is workable under the circumstances. *Id.*

■ The purpose of giving the Commission authority to discharge policemen is, of course, to protect the public interest. *City of Anderson v. State Ex Rel. Page*, 397 N.E.2d 615, 619 (Ind.Ct.App.1979). However, the purpose of the hearing is to protect the accused policeman. In providing such protection, formal procedure is required, not to foreclose judicial review, but to protect the one charged. *Id.*

■ Here, during Blanco's presentation of evidence at the sentencing phase of his hearing, Chief Demmon was called. Blanco's counsel then attempted to ask Demmon questions relating to the discipline of other police officers, in other police commission hearings, who were not parties to the Blanco case. Counsel for the Town made numerous objections to the questions and the objections were sustained. The Commission advised Blanco's counsel to call other witnesses. Nevertheless, Blanco's counsel continued to question Demmon. Eventually, the Commission, on advice from its counsel, dismissed the witness, and, thereafter, recessed the hearing.

Where, as here, we are reviewing a determination by the trial court that the agency failed to follow the correct procedures in reaching its decision, we are required to give deference to the trial court, as the trial court heard evidence and testimony regarding the agency procedures. *Ripley Cty. Bd. of Zon. v. Rumpke of Ind.*, 663 N.E.2d 198, 203 (Ind.Ct.App.1996), *trans. denied.* Here, in its Findings of Fact, the trial court determined that "Blanco was denied the right to introduce evidence in his own behalf at 'sentencing phase' of this matter as is required by law." We will set aside specific findings only if they are clearly erroneous, meaning the record lacks any facts or reasonable inferences supporting them. *Ripley*, 663 N.E.2d at 204. From the evidence presented to us, we cannot say that the record lacks any facts or reasonable inferences supporting the finding that Blanco was denied his right to present evidence on his own behalf. Therefore, we must conclude that Blanco was not given an opportunity to present evidence on his own behalf during the sentencing phase of his hearing. The trial court's determination was not erroneous.

■ Finally, we address whether the trial court erred in finding that the Commission's use of an executive session for deliberations was permissible. A transcript of the hearing which took place August 8th through August 11th establishes that at the close of the hearing, the Commission "recessed" to an executive session to consider the charges against Blanco. After deliberating for approximately three hours, the Commission reconvened and found Blanco guilty of four counts.

Blanco argues that there was no basis for the trial court's finding that the executive session was appropriate. According to Blanco, because the notice of the August hearing did not state that an executive session would be held for the purposes of deliberating the charges against Blanco, the trial court's finding that the session was appropriate was clearly erroneous.

IND.CODE § 5–14–1.5–6.1(b) (1991 Supp) states in pertinent part that "[e]xecutive sessions may be held only in the following instances: . . . (5) [w]ith respect to any individual over whom the governing body has jurisdiction: . . . (B) to discuss, before a determination, the individual's status as an employee. . . ." The statute further states that

"[p]ublic notice of executive sessions must state the subject matter by specific reference to the enumerated instance or instances for which executive sessions may be held under subsection (b)." IND.CODE § 5–14–1.5–6.1(d) (1991 Supp).

Here, the notice for the August hearings read as follows:

Notice is hereby given that a public meeting will be held by the Metropolitan board of Police Commission on 8–8–92, at 9:00 AM, at the Merrillville Town Hall, 13 W 73rd Ave, Merrillville Indiana.

Pursuant to I.C. 5–14–1.5–5, and all related sections.

The subject of this meeting will be a hearing and disposition of disciplinary charges filed against Officer Peter Blanco III.

Pursuant to I.C. 36–8–3–4 and all related section.

The meeting will continue until concluded.

*Deposition of Daniel Demmon, Exhibit 4.*

Whereas it is permissible for a board to conduct its deliberations in executive session, *Marion County Sheriff's Merit Bd. v. Peoples Broadcasting Corp.*, 547 N.E.2d 235, 238 (Ind.1989), according to IND.CODE § 5–14–1.5–6.1(d), notice of the executive session must be given. Here, the Commission's notice failed to inform the public that an executive session would be held for the purpose of deliberating. Thus, the executive session was in violation of the Open Door Law, and the trial court erred in finding that the executive session was appropriate.

The judgment of the trial court is affirmed in part and reversed in part.

GARRARD and DARDEN, JJ., concur.