Joel SCHWARTZ, Appellant–Plaintiff,

v.

GARY COMMUNITY SCHOOL CORPORATION, Appellee–Defendant.

No. 45A03–0103–CV–94.

Court of Appeals of Indiana.

Feb. 4, 2002.

Kathryn D. Schmidt, Burke Costanza & Cuppy LLP, Merrillville, IN, Attorney for Appellant.

Robert L. Lewis, Robert L. Lewis & Associates, Gary, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Plaintiff–Appellant, Joel Schwartz (Schwartz), appeals the trial court's denial of his claim for terminal pay, liquidated damages, and attorney fees against Defendant Appellee, Gary Community School

Corporation (GCSC), and the trial court's order for the repayment of funds he received under the GCSC's sabbatical leave policy.

We reverse.

## STATEMENT OF THE ISSUES

Schwartz raises three issues for review, which we restate as:

1. Whether the trial court erred when it found that the payment for Schwartz's accumulated sick leave was not wages under I.C. 22–2–5–2; thus, denying his request for liquidated damages and attorney fees.

2. Whether the trial court erred when it found that Schwartz was not entitled to terminal pay because he was not yet 50 years old.

3. Whether the trial court erred when it ordered Schwartz to repay a portion of the funds he had received under the GCSC's sabbatical leave.

## FACTS AND PROCEDURAL HISTORY

Schwartz obtained a Master's Degree in school psychology in 1976. In 1978, he was hired as a psychologist by the GCSC. In 1980, he became an evaluator in GCSC's Department of Evaluation and Research, where he remained until 1989. From 1989 to 1991, he served as Acting Director of that department until a new director was hired, at which time he resumed his duties as an evaluator until 1994, when he was again appointed Acting Director. On September 3, 1996, Schwartz went on an approved sabbatical leave for one year, returning to his job as Acting Director on September 2, 1997.

In December 1998, Schwartz was notified by letter that GCSC's Board of School Trustees (Board) was considering a decision not to renew Schwartz's contract for the coming school year. The letter stated:

"[a] recommendation for non-contract renewal shall be made no later than April 1, 1999. At that time, you will be given the reasons for the non-renewal in writing and will be afforded all due process rights pursuant to Board Policy No. 440." (Appellant's Appendix at 48). On January 27, 1999, the Board notified Schwartz of its decision not to renew his contract effective July 1, 1999, citing a reorganization of the district and new job descriptions. Schwartz began investigating employment opportunities in the private sector. Also, he applied for an open position as school psychologist on April 29, 1999, and reapplied for the job of Director on May 26, 1999.

Schwartz testified at trial that he heard nothing further on his requests and so, on August 16, 1999, he wrote GCSC the following letter:

Please be advised that I have decided to terminate my employment with the Gary Community School Corporation. As such, I will not be accepting a position as a School Psychologist, for the 1999–2000 school year, as indicated in an earlier "Request for Transfer" form filed with your office. This letter is a follow-up to my phone call to the your (sic) Department made on August 13, 1999, at which time I shared this information with Mr. Gregory Smith. Your assistance in processing my termination request would be appreciated.

(Appellant's Appendix at 74.)

Under GCSC's various leave policies, Schwartz received thirteen (13) sick days per year, to which he could add another ten (10) days per year "of unused vacation time when job demands have precluded the taking of all of one's authorized vacation time." (Appellee's Appendix at 20). As of June 30, 1999, Schwartz had accumulated 110 days of unused sick leave. An-

other GCSC policy entitled departing administrators to the sum of Fifty Dollars ($50.00) for each day of unused sick leave, up to 200 days. Under this policy, Schwartz was entitled to $5,500.00 in accumulated sick benefits. GCSC also had a policy that an employee with twenty (20) to twenty-four (24) years of service would receive "terminal" pay of $4,000.00 "upon retirement." (Appellant's Appendix at 54). Schwartz had been a GCSC employee for twenty-one (21) years.

Schwartz, having received no response to his August letter, sent a second letter dated September 26, 1999, which stated:

> My letter to you dated August 16, 1999 was intended only to inform you that I was rescinding my request for transfer. At the time this letter was written I was not under contract to work for the [GCSC]. As you are aware, I received written notification in a letter from the Gary School Board dated January 27, 1999 that my contract with the [GCSC] would not be renewed and this action was initiated and enforced by the [GCSC]. According to the Wage and Benefit package, it is my understanding, that I am entitled to a benefit for my unused sick days in the amount of $5500.00 and that I am also entitled to receive severance pay in the amount of $4000.00 dollars. To date, I have not received either of these benefits.
>
> On September 13, 1999, I phoned your office to inquire about my benefit checks and I was informed by Ms. Diana Brae that my benefit check for unused sick leave was being withheld pending inquiry into my potential liability for repayment of funds provided to me for my 1996–1997 approved sabbatical leave.

The Gary School Board's decision to not renew my contract violates the "Return to Service" provision of my sabbatical contract and irrevocably disabled my ability to comply with the "return-to-regular-service" provision of the contract. Additionally, the "Return to Service" provision of my sabbatical contract states that an administrator/supervisor shall be restored to his/her former position or to a position of like nature and pay. To date, there has been no action taken by your office, the Superintendent, or the Gary Community School Board, that has attempted, in any way, to honor the terms of the sabbatical contract by restoring me to a "position of like nature and pay".

(Appellant's Appendix at 50).

Schwartz, dissatisfied with the lack of action on his request for payment of benefits, initiated this action with the filing of his complaint March 2, 2000, which sought payment of these benefits along with double damages and attorney fees under Ind. Code §§ 22–2–5–2 and 22–2–4–4. GCSC filed an answer and a counterclaim, seeking reimbursement of $5,333.97, which it claimed was due under a provision of its sabbatical leave policy that required partial repayment of the reduced salary Schwartz received while on sabbatical because he remained employed with GCSC for less than three years after returning from sabbatical.[1]

A bench trial was held on February 15, 2001. During the trial, Schwartz introduced several internal memoranda exchanged between GCSC's in-house counsel, Rochelle Moody, and GCSC's Executive Director of Human Resources, Dr. James Scott, acknowledging that Schwartz was

---

1. Specifically, the policy stated: "If the return is for one year, but less than two years, 50% of the difference between the sabbatical salary as a teacher and his/her administrative sabbatical salary shall be repaid to the School Corporation upon termination of employment."

entitled to both the accrued sick leave and the terminal pay, but that both were being withheld pending a determination of whether GCSC could withhold these sums to offset what it claimed was due as reimbursement under the sabbatical leave policy. At trial, however, GCSC's former Executive Director of Human Resources, Pete Troupos (Troupos), denied that Schwartz was entitled to any terminal pay, claiming that attainment of age–50 was an additional requirement for entitlement to terminal pay, though he admitted on cross examination that there was no written document stating the age–50 requirement. Schwartz was 49 years old when he submitted his resignation.

Troupos testified further that all administrators, Schwartz included, received a notice of non-renewal that particular year because:

> That specific year, meaning the spring of 1999, we implemented a new payroll computer system, and it utilized a different format and forms to print out the individual contracts. But it was understood that—and therefore, the contracts were not printed until after the retirement of Dr. Schwartz. But all the administrators had contracts, either verbally, continuation, with the exception anybody that may have retired voluntarily prior to the beginning of the '99–2000 school year.

(R. at 71). Troupos testified that he thought Schwartz had been informed orally that his request for transfer to school psychologist had been approved, although he admitted on cross-examination that he had no personal knowledge of this fact. Schwartz denied he had received notice to that effect. GCSC submitted its Exhibit A, Schwartz's Request for Transfer, which it claimed demonstrated that Schwartz's reassignment had been approved on June 30, 1999. Gary's counsel represented to the trial court that the document stated, "[i]t was approved June 30, 1999. The position was effective July 1, 1999." (R. at 31). Schwartz's counsel objected to the characterization on the grounds that the document "speaks for itself." (R. at 31).

On February 23, 2001, the trial court issued the following Order:

> On February 15, 2001 this cause was submitted to the Court as a Bench Trial on Plaintiff's Complaint and Defendant's Counterclaim thereto. Both sides presented evidence and oral argument. The Court took this matter under advisement and after having considered, NOW FINDS as follows:
>
> 1. Plaintiff is entitled to sick leave in the amount of Five Thousand Five Hundred Dollars ($5,500.00) under his Complaint.
>
> 2. Plaintiff is not entitled to severance pay, having resigned his position before reaching the age of fifty (50).
>
> 3. Plaintiff, having voluntarily resigned from the School Corporation in August, 1999 and under the Rules Governing Sabbatical Leave was required to return the sum of Five Thousand Two Hundred Thirty Three Dollars and Ninety–Seven Cents ($5,233.97) to the Gary Community School Corporation. The Court now offsets the amount due from Plaintiff under the Rules Governing Sabbatical Leave and awards Plaintiff the sum of Two Hundred Sixty–Six Dollars and Three Cents ($266.03) remaining sick leave due. The Court further determines that sick leave does not constitute pay under the Indiana Statute for Treble Damages and the plaintiff is not entitled to Treble this amount nor to an award of attorney's fees.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Judgment is awarded in favor of the Plaintiff in the amount of Two Hundred

Sixty–Six Dollars and Three Cents ($266.03) and the costs of this action. Schwartz now appeals.

### DISCUSSION AND DECISION

I. *Schwartz's accumulated sick leave pay are "wages" under Indiana's Wage Payment Statute, Ind.Code § 22–2–5–2.*

 Schwartz prevailed below on the issue of his entitlement to accumulated sick leave earned, but not paid, prior to the termination of his employment. This fact, he argues, brings his claim under the provisions of Indiana's Wage Payment Statute, Ind.Code § 22–2–5–1 *et seq.* The trial court disagreed, concluding that the sick leave did not constitute wages under the statute and, thus, denied his claim for liquidated damages and attorney's fees as provided in Ind.Code § 22–2–5–2. As the proponent on this issue below, Schwartz is appealing from a negative judgment. To prevail, therefore, he must demonstrate that the trial court's determination was contrary to law. *Town of Merrillville v. Blanco,* 687 N.E.2d 191, 195 (Ind.Ct.App. 1997). A trial court decision is contrary to law if the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *Id.* In making our determination, we will consider the evidence in the light most favorable to the appellee together with all the reasonable inferences to be drawn from them. *Id.*

 As neither party requested the trial court to enter special findings, its judgment will be treated as a general verdict except for any special findings entered *sua sponte,* which will control only as to those issues they cover. *United Farm Family Ins. Co. v. Riverside Auto Sales,* 753 N.E.2d 681, 684 (Ind.Ct.App.2001). With respect to this issue, however, the trial court made no findings of fact, just a conclusion of law, to wit: "The Court fur-

ther determines that sick leave does not constitute pay under the Indiana Statute for Treble Damages and the plaintiff is not entitled to Treble this amount nor to an award of attorney's fees." (Appellant's Appendix at 4). As such, it is a general judgment that will be affirmed if it can be sustained upon any legal theory consistent with the evidence. *Id.*

Ind.Code § 22–2–5–1(b) requires

[p]ayment shall be made for all wages earned to a date not more than ten (10) days prior to the date of payment.... However, if an employee voluntarily leaves employment, either permanently or temporarily, the employer shall not be required to pay the employee an amount due the employee until the next usual and regular day for payment of wages, as established by the employer.

Should an employer fail to abide by this mandate, then Ind.Code § 22–2–5–2 provides:

Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%) of the amount due to him in addition thereto, not exceeding double the amount of wages due, and said damages may be recovered in any court having jurisdiction of a suit to recover the amount due to such employee, and in any suit so brought to recover said wages or the liquidated damages for nonpayment thereof, or both, the court shall tax and assess as costs in said case a reasonable fee for the plaintiff's attorney or attorneys.

Schwartz contends that his accumulated sick pay was a wage that GCSC was re-

quired to pay within the time frame set forth in Ind.Code § 22–2–5–1(b). If it does, then an award of liquidated damages is mandatory. *Valadez v. R.T. Enterprises, Inc.*, 647 N.E.2d 331, 333 (Ind.Ct.App. 1995) ("the plain language of the statute makes no exception . . .").

The issue of whether payment for accrued but unused sick leave qualifies as wages for purpose of this statute is an issue of first impression in Indiana. We have, however, examined this issue within the context of both bonus payments and vacation pay, and those decisions guide us here. In *Wank v. Saint Francis College*, 740 N.E.2d 908, 912 (Ind.Ct.App.2000), *trans. denied*, we determined that:

> Wages are "something akin to the wages paid on a regular, periodic basis for regular work done by the employee. . . ." Deferred payment of compensation that accrued during an employee's tenure is a wage. For example, vacation pay, earned each week but deferred until a later time, is a wage.

*Id.* (citations omitted). *See also Die & Mold, Inc. v. Western*, 448 N.E.2d 44, 48 (Ind.Ct.App.1983) ("vacation pay is additional wages, earned weekly, where only the time of payment is deferred."). Over his twenty-plus years of employment with GCSC, Schwartz had accrued 110 days of unpaid sick leave; thus, the trial court found that Schwartz was entitled to $5,500.00.

■ We are not persuaded by GCSC's argument that, because the sick benefit was paid upon termination of employment rather than on a regular, ongoing basis, the payment was exempted from the definition of wages. There appears no dispute that Schwartz could have used his sick days as he earned them during the tenure of his employment, but that he chose instead to defer their use until the end. This was an option provided by GCSC.

Thus, we disagree with GCSC that *Wilson v. Montgomery Ward & Co.*, 610 F.Supp. 1035 (N.D.Ind.1985) controls. With its own words, Wilson can be distinguished:

> Rather, the "wages" contemplated by I.C. 22–2–5–1 are something akin to the wages paid on a regular, periodic basis for regular work done by the employee—the paycheck which compensates for the work done in the previous two weeks. Here, Wilson seeks something far different. The promise made by Van Booven was for an amount above and beyond the regular paychecks Wilson received; it was a kind of bonus offered as an incentive to stay on until the store closed. It was measured in an unconventional way—based on years of service—which had no relation to the time worked (thirteen weeks' pay for nine weeks of work). It is more appropriate to view the promise of the Merrillville meeting as a promise to pay a "bonus"—something extra—in return for staying on and closing the stores.

*Id.* at 1038. Unlike *Wilson*, Schwartz's sick leave was earned over the course of his twenty-one year employment with GCSC. Had Schwartz used any of these sick days during his tenure with GCSC, he would have received their benefit as part of his regular wages. Further, each employee had the option of converting up to ten (10) vacation days a year into sick days. Even though the benefit was not paid until after his employment terminated, it was earned during the course of his employment. Contrary to GCSC's argument, timing is an issue as to the accrual of the benefit, not to the payment thereof.

In conclusion, we find no reason in this case to distinguish between the payment of accrued vacation pay, earned over time, and the payment of accrued sick pay, like-

wise accrued over time.[2] For this reason, we find no evidence in the record sustaining the trial court's conclusion that the sick pay was not a wage.

Indiana Code § 22-2-5-1 imposes three requirements on an employer: "(1) [the] employee's wages must be paid in money; (2) if requested, employers must pay employees semi-monthly or bi-weekly; and (3) employees, upon separation from employment, must be paid the amount due to them at their next and usual payday (unless their whereabouts are unknown)." *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 835 (Ind.Ct.App.1995). An employer who violates any of these requirements is subject to the penalties of Indiana Code § 22-2-5-2 which provides for liquidated damages. *Valadez*, 647 N.E.2d at 333. Having concluded that Schwartz's accrued sick leave constituted "wages" under the statute, the trial court erred by not granting him liquidated damages and attorney fees.

### II. Terminal Pay

Schwartz also appeals the trial court's determination that he was not eligible to receive terminal pay because he "resigned his position before reaching the age of fifty (50)." As evidence of his entitlement to terminal pay, Schwartz produced Minutes from the Board's meeting of Tuesday, June 22, 1999, which state that the terminal pay for someone with Schwartz's length of service was $4,000.00. According to that document, this terminal payment is "payable upon retirement." Schwartz also produced several written memos prepared by employees of GCSC, including a memo from the current Director of Human Resources, which stated that Schwartz was entitled to terminal pay, but that it was being withheld to offset other monies claimed due. Only once litigation commenced did GCSC assert the age 50 defense. At trial, however, GCSC's witnesses admitted there existed no written requirement that an employee had to be age 50 to be entitled to terminal pay.

Instead, Troupos justified the age requirement by stating "[w]e consider retirees individuals who can be processed to the Indiana State Teacher's Retirement Fund. If they are not retiring, we do not process papers. We consider those resignations. Even though they may say retirement, it's a resignation from a job." (R. at 78). This same argument was made, and rejected, in *Crawford County Community School Corp. v. Enlow*, 734 N.E.2d 685 (Ind.Ct.App.2000), *trans. denied.* Like Schwartz here, Enlow chose to retire from the Crawford County school system after twenty-four years of service, but prior to age 50. Crawford County refused, arguing that Enlow had resigned, not retired, because: 1) he went to work elsewhere, and 2) members of the Indiana state teachers' retirement fund are not eligible for early retirement until they are at least fifty years of age. *Id.* at 691. To that, we said: "Enlow's eligibility to re-

---

**2.** The determination whether sick leave benefits are wages should be determined on a case-by-case basis. Here, the employer's policy was to allow the terminating administrative employee to receive $50.00 a day for each unused day of sick time, up to a maximum of 200 days. That policy makes the payment of unused sick time the same as the payment of earned but unused vacation pay. There are circumstances, however, as demonstrated in *Shorter v. City of Sullivan*, 701 N.E.2d 890, 892 (Ind.Ct.App.1998), where sick leave benefits are not analogous to vacation benefits and cannot be considered as wages. In *Shorter*, the City of Sullivan's policy provided that accumulated sick leave could only be used when an employee was sick or other conditions were present. As those other conditions did not include the termination of employment, the firefighters' accumulated sick leave was not treated as wages.

ceive a pension from the Indiana state teachers' retirement fund is a separate issue from his eligibility to receive severance pay under the 1993–1997 collective bargaining agreement."

■ Here, the only documented limitation on eligibility for terminal pay was that it was "payable upon retirement," with "retirement" being undefined. (R. at 46). As in *Crawford County*, we do not interpret the term "retirement" to mean solely the complete withdrawal from the work force. There can be no dispute that many individuals continue to work for remuneration after "retirement."

Here, the Appellant invites us to reweigh the evidence. This we can do only if the evidence, as a whole, leads to a conclusion opposite that reached by the trial court. *Town of Merrillville*, 687 N.E.2d at 195. We find that standard met here. The only evidence supporting the trial court's finding, that the attainment of age 50 was an eligibility requirement for terminal pay, was the testimony of Troupos, a former GCSC employee. To the contrary, Schwartz submitted two memos authored by current GCSC employees stating that Schwartz was entitled to terminal pay. Moreover, no document was produced stating such a requirement. As we observed in *Morton v. E–Z Rake, Inc.*, 397 N.E.2d 609, 614 (Ind.Ct.App.1979), such purported limitations on entitlement, if applicable, could and should have been specified in writing. Because they were not, we find no credible evidence supporting the trial court's determination that Schwartz was ineligible for the terminal pay due to his age.

### III. Repayment of sabbatical leave pay

■ Finally, Schwartz argues that the trial court erred when it found him liable for repayment of funds under the sabbatical leave policy because, by not renewing his contract for the 1999 2000 school year,

it was GCSC's fault he was unable to continue in service for the full three year period required by the policy. With respect to this issue, the trial court premised its decision upon finding that Schwartz had voluntarily resigned in August 1999. "A reversal of a judgment predicated upon a finding results only when there exists no competent evidence to support such finding." *Heckman v. Heckman*, 235 Ind. 472, 134 N.E.2d 695, 698 (Ind.1956).

The only evidence supporting the trial court's finding that Schwartz's departure was voluntary came in the form of testimony from Troupos to the effect that he "thought [Schwartz] was notified that [ ] he would be would be assigned to a psychologist position per his voluntary request," and that he "believe[d]" that Schwartz had received a copy of "the approved form." (R. at 72). On cross-examination, however, Troupos admitted that he had no personal knowledge that Schwartz received such notification, although on redirect he testified that he had told Schwartz that "the Superintendent signed [his transfer request]." (R. at 79). To the contrary, Schwartz testified that he was never informed that his request for transfer had been approved and that his employment with GCSC was assured. The only document relating to this issue was Schwartz's transfer request that Troupos claimed demonstrated that Schwartz's transfer request had been approved. We note, however, that while the transfer request was signed by the Superintendent in the "Acknowledged" box, the two "Approved" boxes are blank. In fact, nowhere on the form purporting to demonstrate approval of the transfer is there any indication of such approval.

At best, the evidence leads to several conflicting inferences regarding whether Schwartz actually knew that he had been reassigned to a school psychologist posi-

tion. The evidence does not conflict, however, regarding the fact that GCSC terminated his contract as Acting Director effective June 30, 1999, the position Schwartz had held both before and after his sabbatical leave. Even if his transfer had been approved, we do not believe there is anything in the evidence to support an inference that Schwartz's request for a transfer was voluntary. Nor is there any evidence to conclude that Schwartz would have terminated his employment with GCSC had he not been removed from the Acting Director position. Thus, we find nothing voluntary in Schwartz's actions.

Having concluded that Schwartz did not voluntarily resign from GCSC, we turn now to the contract language controlling this dispute. According to GCSC's School Administrative Association's Wage and Benefit Package, "[m]embers of the GSAA on sabbatical leave shall be paid at one-half their administrative salary during the leave period. If the administrator does not return to regular service at the expiration of the leave, salary paid to such administrator during such leave shall become due and payable" to GCSC in an amount dependent upon how many years, up to three, the employee remained in service upon return from sabbatical. (Appellee's Appendix at 18). After three years, no repayment is required. GCSC argues, and the trial court held, that because Schwartz was employed by it for less than two years after returning to service from his sabbatical, he was liable to repay $5,333.97.

Schwartz contends that he should not be liable for the repayment because GCSC breached the sabbatical leave contract provision requiring that "[a]n administrator/supervisor, upon return to service from sabbatical leave of absence, shall be restored to his/her former position or to a position of like nature and pay." (Appel-

lee's Appendix at 28). Because GCSC terminated his position that was of like nature and pay, Schwartz argues, it was the first to breach and, hence, not entitled to enforce the contract against him, citing *Licocci v. Cardinal Assoc., Inc.*, 492 N.E.2d 48, 52 (Ind.Ct.App.1986). We agree.

■ While the contract does not provide for the contingency presented here, we note that it does exempt from the repayment provisions those employees who either die or become disabled within the first three years after returning. These are clearly circumstances beyond the employee's control. We find GCSC's decision to terminate Schwartz from the position he held both before and after his sabbatical likewise one beyond the employees control. Thus, we agree that its decision to terminate Schwartz as Acting Director relieved him of any obligation to repay benefits previously received.

### CONCLUSION

Having determined that the trial court's decision was in error in several respects, we remand for the purpose of adjusting Schwartz's award consistent with this decision.

Reversed.

MATTINGLY–MAY, J., and BARNES, J., concur.